## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SURVIVOR A** | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| **ANNE ARUNDEL COUNTY** | : | |
| **BOARD OF EDUCATION,** | | |
| Serve on: | : | |
| Mark T. Bedell, Ed.D. | | |
| Superintendent of Public Schools | : | |
| 2644 Riva Road | | |
| Annapolis, MD 21401 | : | |
| and | : | |
| **CARSON C. ARNOLD,** | : | |
| 1586 Chocataw Road | | |
| Arnold, MD 21012, | : | |
| Defendants | : | |

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.      Plaintiff Survivor A, by and through his undersigned counsel, Patrick Thronson, Tara Eberly, and Janet, Janet & Suggs, LLC, hereby sues Defendants Anne Arundel County Board of Education ("Board" or "BOE") and Carson Arnold ("Mr. Arnold") (collectively "Defendants").

2.      From 2019–2021, Survivor A, then a child attending school at Annapolis High School and Broadneck High School, was repeatedly sexually abused by Jennifer Arnold, a teacher at Annapolis High School, in the home she co-owned and resided with her then-husband, Carson Arnold.

3.     Defendants BOE and Mr. Arnold committed tortious acts and omissions with respect to Survivor A, as further detailed herein, each of which directly and proximately resulted in repeated sexual assaults by his teacher Jennifer Arnold, while he was a minor attending Annapolis High School and Broadneck High School in Anne Arundel County, Maryland.

4.     Plaintiff Survivor A seeks recovery for the significant damages he has suffered as a result of the repeated incidents of sexual abuse that should have been prevented by the Defendants and as a result of Defendants' violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, et seq.; the Maryland Declaration of Rights; and common-law torts.

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff Survivor A is an adult citizen of the United States and a resident of the State of New York. At all relevant times, Survivor A was a child residing in Anne Arundel County, in the home of Jennifer Arnold and Defendant Carson Arnold.

6.     Plaintiff requests leave to proceed under a pseudonym due to the sensitive and highly personal nature of the allegations and the potential for their disclosure to cause further mental and emotional harm to Plaintiff. Survivor A's identity is known to the Defendants, and there will be no unfairness or prejudice to them in having the action proceed against them anonymously. For these and other reasons, it is appropriate for Plaintiff to proceed using a pseudonym. *See, e.g.*, *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993).

7.     At all relevant times, Plaintiff Survivor A was a student of the Anne Arundel County public schools, including Annapolis High School and Broadneck High School, which were overseen and managed by the BOE.

8.     Defendant BOE is the governing and final policymaking body for the Anne Arundel County public school system.

9.      At all relevant times, the Anne Arundel County School District has been overseen, governed, and managed by the BOE.

10.     At all relevant times, BOE has operated under various names, including Anne Arundel County Public Schools and Annapolis High School.

11.     BOE's principal office is located at 2644 Riva Road, Annapolis, MD 21401. It is subject to suit directly under federal, state, and common law, and also pursuant to Md. Code Ann., Government § 5-518(d)(1).

12.     At all relevant times, BOE was required to uphold and enforce Maryland State Board of Education regulations pursuant to Md. Code Ann., Educ. § 4-108 and creating and enforcing policies and procedures to protect and ensure the safety and wellbeing of students and to comply with federal and state laws that protect its students.

13.     At all relevant times, BOE had a duty to "seek in every way to promote the interests of the schools under its jurisdiction." Md. Code Ann., Educ. § 4-101.

14.     BOE and each of its public schools, including Annapolis High School, are and were at all relevant times recipients of federal funds within the meaning of 20 U.S.C. § 1681(a).

15.     At all relevant times, Annapolis High School ("Annapolis High") was a public high school located at 2700 Riva Road, Annapolis, MD 21401.

16.     At all relevant times, Broadneck High School ("Broadneck High") was a public high school located at 1265 Green Holly Drive, Annapolis, MD 21409.

17.     At all relevant times, Annapolis High and Broadneck High were supervised and monitored by the superintendent of the BOE and the principals of Annapolis High and Broadneck High, respectively.

18.    At all relevant times, the BOE's powers and duties have included the authority to adopt, enforce, and monitor the enforcement and effectiveness of all policies for the management and governance of Annapolis High.

19.    At all relevant times, Defendant BOE has been a body corporate that possessed all the usual powers of a corporation for public purposes, and in that name may sue and be sued, purchase, hold and sell personal property and real estate, and enter into such obligations as are authorized by law.

20.    At all relevant times, BOE was responsible for overseeing educational matters that affect the county, including the oversight and management of supervision of public school within the county's geographical jurisdiction, including Annapolis High and Broadneck High, pursuant to Md. Code. Ann., Educ. § 4-108.

21.    At all relevant times, BOE was responsible for policy making, decision making, hiring/firing decisions and complying with applicable policies, procedures, duties of care and laws. BOE had the power and authority to control, uphold and enforce policies, laws and procedures to protect the safety and well-being of Survivor A, and to provide him with the benefits of those rules, laws and requirements.

22.    At all relevant times, BOE—directly and by and through its employees, servants, and actual or ostensible agents—had the duty and responsibility to promulgate policies and procedures to protect students like Survivor A from rape, sexual assault, sexual harassment, and misconduct by school administrators, staff, and teachers, including but not limited to BOE's agents and employees, the superintendent of BOE, the principal of Annapolis High, other teachers and administrative staff at Annapolis High, and Jennifer Arnold.

23.    At all relevant times, BOE possessed and exercised the right to manage and control the operations of Annapolis High and Broadneck High, including but not limited to the right to

4

supervise teachers like Ms. Arnold, and the right to hire, supervise, and fire any employee of Annapolis High, such as, without limitation, the superintendent of BOE, the principal, teachers, and other administrative staff of Annapolis High and Broadneck High, and Ms. Arnold.

24.     At all relevant times, BOE had ultimate policymaking authority for Annapolis High and Broadneck High.

25.     At all relevant times, the BOE superintendent, BOE employees and staff, the Annapolis High and Broadneck High principals, and Annapolis High and Broadneck High teachers and staff served at the pleasure of BOE and were subject to the BOE's supervisory authority.

26.     At all relevant times, the knowledge of BOE's employee teachers, superintendents, principals, and administrators—including but not limited to the teachers and principal of Annapolis High and Broadneck High, as well as Arnold—which is relevant to the facts, acts, and omissions pled herein, was imputable to Defendant as a matter of law.

27.     At all relevant times, BOE's employee teachers, superintendents, principals, and administrators acted under color of law.

28.     At all relevant times, Arnold was an employee, agent, and servant of BOE, acting within the course and scope of her employment.

29.     At all relevant times, Arnold acted under color of law, because she misused authority that she was given by BOE when it hired and employed her as a teacher and coach.

30.     At all relevant times, BOE acted under color of law.

31.     BOE is directly liable for its own tortious acts and omissions and vicariously liable for Arnold's tortious acts and omissions, including those alleged herein.

32.     BOE is vicariously liable, as to the Title IX, Maryland constitutional, and common-law claims pled below, for the acts and omissions of Jennifer Arnold and all co-Defendants, with the exception of Carson Arnold, because they served as its agents, servants, and employees.

5

33.     Jennifer Arnold is a citizen of the State of Maryland and was, at all relevant times, a public education teacher employed by BOE. Ms. Arnold was Survivor A's ninth grade teacher during the 2019-2020 school year.

34.     BOE entrusted Arnold with the care, supervision, education, and safety of students in her class, including Survivor A.

35.     At all relevant times, Mr. and Ms. Arnold acted as actual or apparent agents of one another.

36.     At all relevant times, Mr. and Ms. Arnold's knowledge of events relevant to this action was imputable to one another as a matter of law.

37.     At all relevant times, Mr. and Ms. Arnold had physical custody and guardianship of Survivor A.

38.     At all relevant times, Survivor A resided on a full-time basis at the home of Mr. and Ms. Arnold, located at 1586 Chocataw Road, Arnold MD, 21012.

39.     This Court has personal jurisdiction over the parties, as all Defendants are citizens of the State of Maryland.

40.     At all times relevant to this complaint, Ms. Arnold acted within the scope of her employment as an agent and servant of BOE, and acted as an actual agent, apparent agent, partner, joint venturer, joint enterprise, or co-conspirator of each Defendant.

41.     At all relevant times, all agents, servants, and employees of BOE, including all those identified herein, acted under color of law.

42.     Defendant Carson Arnold is an adult citizen of the State of Maryland and was the husband of Jennifer Arnold at all relevant times herein. The two are now divorced.

43.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as there is complete diversity among the parties and the amount in controversy as to each cause of action exceeds $75,000.

44.     This Court also has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. 1681(a), et seq.

45.     The Court also has jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

46.     Venue as to all claims is appropriate in this Court pursuant to 28 U.S.C. § 1391 since the relevant facts giving rise to this case and damages sustained by Survivor A occurred in this District.

47.     Damages claimed for each and every cause of action below exceed $75,000.

48.     Although legally unnecessary, out of an abundance of caution, Plaintiff provided timely notice of his claims to BOE.

## FACTS COMMON TO ALL COUNTS

49.     Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

50.     In 2001, the U.S. Department of Education Office for Civil Rights (hereafter "OCR") issued its *Revised Sexual Harassment Guidance: Harassment of Students by School employees, Other Students or Third Parties*.[1] This guide stated that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn."  And it indicated that schools must take prompt and effective action to intervene in and prevent the reoccurrence of

---

[1] The Guide can be found at: https://www2.ed.gov/offices/OCR/archives/pdf/shguide.pdf.

sexual abuse and harassment of students by employees in order to ensure a safe learning environment.

51.     Survivor A was born in 2004.

52.     Survivor A moved from the home of his natural mother to the home of his uncle in Annapolis, Anne Arundel County, Maryland in the late summer of 2017, so that Survivor A could attend eighth grade in Maryland.

53.     Survivor A was being bullied at the school he attended at that time, and his parents decided that it would be in Survivor A's best interest to finish middle school in Maryland.

54.     Survivor A was academically and socially successful during his 2017-2018 eighth grade school year, and so his parents decided to have Survivor A continue to live with his uncle and enroll him in Annapolis High School in Annapolis, Anne Arundel County, Maryland for ninth grade.

55.     Survivor A was placed by Annapolis High School into a freshman English class taught by Ms. Arnold. Survivor A first met Ms. Arnold in September of 2018, at the commencement of his freshman school year. Survivor A was 14 years old.

56.     Ms. Arnold began grooming Survivor A for abuse in November 2018. Ms. Arnold would inappropriately touch and grope Survivor A over his clothes in a sexual manner, as well as sexually harass and assault him on school property.

57.     In May 2019, Survivor A was experiencing trouble with his living situation with his uncle. Survivor A confided his personal problems regarding his living situation to Ms. Arnold, who was his English teacher at the time.

58.     Instead of reporting the home issues to Survivor A's parents, the proper authorities at Annapolis High School, or to the Anne Arundel County Department of Social Services, Ms. Arnold and her then-husband Mr. Arnold invited Survivor A to live in their personal residence, along with their four minor children, at 1586 Chocataw Road in Arnold, Maryland.

59.     Ms. Arnold used her role as Survivor A's teacher at Annapolis High School to reassure Survivor A's parents that that her home was a safe environment for Survivor A to live in while attending public school.

60.     By June of 2019, Survivor A was fully moved into the home of Mr. Arnold and Ms. Arnold. The address of Survivor A on file with the BOE and Annapolis High School was changed to Mr. and Mrs. Arnold's address, putting Annapolis High and BOE on notice that Survivor A was being left inappropriately alone and residing with his freshman English teacher.

61.     Survivor A lived in a dark basement room in the Arnold's home.

62.     At all relevant times, on information and belief, the BOE, the principals of Annapolis High and Broadneck High, and other leadership and staff at Annapolis High and Broadneck High had actual knowledge that Survivor A was living with Ms. Arnold.

63.     At all relevant times, the fact that Survivor A was living with Ms. Arnold was common and widespread knowledge among teachers, administration, and students at Annapolis High and Broadneck High.

64.     On one evening in July 2019, during a boating outing, Mr. Arnold threw a boating pole at Survivor A out of jealousy and anger, because of excessive attention that Ms. Arnold was giving to Survivor A.

65.     Survivor A was enrolled at Broadneck High School for his tenth-grade school year in 2019-2020 using the home address of Ms. Arnold and Mr. Arnold, where he continued to live.

66.     On information and belief, Ms. Arnold encouraged Survivor A to enroll at Broadneck so he would no longer be at Annapolis High, so she would not be as vulnerable to having her misconduct being discovered.

67.     Ms. Arnold continued to groom Survivor A for abuse.

68.     On December 12, 2019, Ms. Arnold went into the private bedroom of Survivor A, pulled his pants down without his consent, and orally raped him. Survivor A was 15 years old. Mr. Arnold was home and in the next room.

69.     Ms. Arnold's abuse of Survivor A rapidly escalated to include rape through intercourse.

70.     Ms. Arnold would visit Survivor A's room at will and demand sex from him. She demanded that he leave his door unlocked.

71.     In January 2020, Survivor A's mother sent a letter to Ms. Arnold revoking permission for Ms. Arnold to have guardianship. In response, Ms. Arnold coerced Survivor A into communicating that he wanted to remain with the Arnolds and wanted Ms. Arnold to continue being his guardian.

72.     In February 2020, Survivor A's mother emailed a guidance counselor, a school resource officer, and an administrator at Annapolis High, asking to arrange a time to pick him up and take him home to Connecticut. None helped facilitate this or informed his mother that Survivor A was at that time a student at Broadneck High School. Survivor A's mother was unable to pick him up from school for the purpose of bringing him home.

73.     Mr. Arnold was aware as of February 2020, at the latest, that Ms. Arnold was sexually harassing, assaulting, and raping Survivor A, but did nothing to protect him and did not report the abuse as required under Md. Code Ann., Family Law § 5-705.

74.     Mr. Arnold was aware as of February 2020, at the latest, that Ms. Arnold had a severe alcohol use disorder and was at risk of mistreating, acting inappropriately toward, and sexually abusing Survivor A.

75.     In February 2020, Mr. Arnold called Survivor A's mother several times. Mr. Arnold had been under the impression that Survivor A had no home to return to. Survivor A's mother told him otherwise.

76.     Ms. Arnold responded by blocking Survivor A's mother's number from Mr. Arnold's phone. Mr. Arnold subsequently got in contact with Survivor A's mother through her sister but did not help facilitate Survivor A's reunification with his family.

77.     Mr. Arnold never disclosed to Survivor A's parents or anyone else that he knew or suspected that Survivor A was being sexually abused.

78.     Survivor A's mother, through counsel, demanded in February 2020 that Ms. Arnold return Survivor A to her.

79.     Ms. Arnold repeatedly groomed, asked for sex, and sent sexually explicit photographs to Survivor A using a cell phone issued by the BOE.

80.     On information and belief, supervisory personnel at the BOE maintained and/or regularly accessed cell phone records for Ms. Arnold's phone and had the ability and authority to do so. Examination of these records would have reflected that text messages were being sent to Survivor A at all hours of the day and night.

81.     Ms. Arnold insisted that Survivor A leave his private bedroom door unlocked so that she could have unfettered access to him for her own sexual gratification. She repeatedly, without consent, would enter his private bedroom and rape Survivor A at all hours of the day and night.

82.     In February 2020, Ms. Arnold sent nude, sexually explicit photographs to 15-year-old Survivor A's cell phone.

83.     When Survivor A asked Ms. Arnold for help with his homework, she would only help him in exchange for sexual favors.

11

84.     On March 2, 2020, Ms. Arnold sent text messages to Survivor A that acknowledged that she was raping the boy on a regular basis during the morning hours, and would withhold rides to Annapolis High School to the child to school in the morning because she had decided to take a break from raping him and wanted to build up the anticipation to rape him on Friday, March 7, 2020.

85.     On March 7, 2020, Ms. Arnold arranged for Mr. Arnold and their minor children to be gone from the house in order for her to be alone to sexually rape and assault Survivor A.

86.     In the days following the sexual assault on March 7, 2020, Ms. Arnold continued her psychological and sexual abuse of Survivor A through text message where she instructs him to leave his private bedroom door unlocked.

87.     Starting in March of 2020 and on an ongoing basis thereafter, Ms. Arnold coerced Survivor A to start to steal and shoplift on a repeated basis for her. She forced Survivor A to steal groceries, gift cards, expensive clothing, other luxury items, and a grill.

88.     In March 2020, Survivor A, along with his parents, arranged to visit family in Arizona in anticipation of the approaching pandemic. Ms. Arnold would not take the child to airport until after she raped the child.

89.     On or about March 11, 2020, Mr. Arnold came home in an intoxicated state and confronted Survivor A, asking words to the effect of "what are you doing with my wife?" Survivor A, fearful, denied that anything inappropriate was occurring.

90.     The Maryland State Superintendent closed all Maryland schools through April 24, 2020, in response to the covid-19 global pandemic, leaving Ms. Arnold with the ability to abuse Survivor A around the clock.

91.     On April 20, 2020, Survivor A asked that Ms. Arnold request that he be transferred back to Annapolis High for better social and athletic opportunities.

92.     Ms. Arnold resisted this, stating by text message, "Transfer to A-hi is dangerous" because "u go to school with the teacher u fuck," but ultimately agreed.

93.     Survivor A began attending Annapolis High again in the fall of 2020.

94.     In May of 2020, Mr. Arnold sent the following text message to Survivor A: "[Survivor A], please leave my home immediately and return to your parents in Connecticut. I do not want you living at my house and your mother and father want you back home with them. Your continued presence is destroying my family and our future together. I'm not sure if you were made aware by Jen that your mother has been seeking your return, but she has and still does."

95.     Mr. Arnold never reported to authorities or Survivor A's parents that Ms. Arnold was or may be abusing Survivor A.

96.     By August 2020, Mr. Arnold had stopped living at the residence.

97.     Ms. Arnold continued to coerce sex from Survivor A through multifarious means, including offering food and gift cards to entice him to have intercourse, and showing intense anger, refusing to speak with Survivor A, and withholding food, money, and transportation to school, activities, or work, when he would refuse. She would also psychologically manipulate him to prevent him from reporting the matter to his parents or move from the residence.

98.     Defendant BOE, through its agents, servants, and employees, had actual knowledge of Survivor A's harassment and abuse while it was occurring.

99.     In January 2021, Survivor A courageously told his father to revoke Ms. Arnold's guardianship.

100.     In February 2021, Survivor A's mother petitioned to revoke guardianship.

101.     Survivor A returned to live with his father in New York in February 2021.

102.     Ms. Arnold continue to manipulate and sexually harass Survivor A by phone, demanding money and attention, among other things, and claiming she was undergoing psychological crises because he was living elsewhere.

103.     On July 6, 2021, the Anne Arundel County Police and the Department of Social Services were first notified in reference to Ms. Arnold's crimes against Survivor A.

104.     Survivor A was interviewed by authorities on July 29, 2021 and disclosed the abuse to them at that time.

105.     At approximately this same time, Survivor A disclosed the abuse to his parents.

106.     Mr. Arnold sought to have Survivor A testify in his divorce proceeding, to testify to the sexual interactions he had with Ms. Arnold, indicating his awareness of those interactions. Survivor A was a minor at the time and did not participate.

107.     Ms. Arnold raped Survivor A hundreds of times.

108.     Ms. Arnold sexually harassed and assaulted Survivor A hundreds of times.

109.     As a direct and proximate result of sexual harassment, sexual assault, and rape by Ms. Arnold, Survivor A experienced the following injuries, including but not limited to the following:

    a.     Rape;

    b.     Severe mental anguish and despair;

    c.     Severe stress;

    d.     Emotional distress and anger;

    e.     Severe anxiety, nervousness, fearfulness, and panic attacks;

    f.     Depression;

    g.     Severe anger;

    h.     Severe irritability;

    i.     Personality changes;

j.      A loss of enjoyment of life;

k.      Difficulty in trusting and interacting with others, including those in positions of authority and/or those in intimate relationships;

l.      Difficulty in participating in and enjoying intimate relationships;

m.     A loss of earnings and earning capacity due to trauma;

n.      Negative impacts on academic grades;

o.      Reputational harm;

p.      Past and future damages for medical, health care, and psychological treatment; and

q.      Other damages as may become apparent during the course of discovery.

## COUNT I
### VIOLATIONS PURSUANT TO 20 U.S.C.A § 1681(C), TITLE IX, EDUCATION AMENDMENTS OF 1972
(Against Defendant BOE)

110.    Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

111.    Title IX of the Education Amendments of 1972 provides that "[n]o person. . .shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

112.    Title IX was enacted for two purposes: to avoid the use of federal resources to support discriminatory practices and to provide individual citizens effective protection against those practices.

113.    To vindicate these purposes, Title IX contains an implied cause of action in favor of victims of discrimination, enforceable in a suit for money damages.

114.    At all relevant times, BOE received federal financial assistance.

115.    At all relevant times, Plaintiff belonged to a protected group, on account of his male sex.

116.    At all relevant times, Plaintiff was subjected to "harassment" within the meaning of Title IX, because he was groomed, sexually harassed, and sexually assaulted by Ms. Arnold.

117.    Ms. Arnold harassed Plaintiff within the meaning of Title IX based on sex, because she targeted him, groomed him, and sexually assaulted him because of his male sex.

118.    Ms. Arnold did not harass female students within the meaning of Title IX.

119.    Ms. Arnold's harassment was so pervasive and severe that it altered the conditions of Plaintiff's education and deprived him of valuable educational benefits to which he was entitled. Ms. Arnold was Plaintiff's teacher and held a position of power and authority over him. Plaintiff suffered serious mental and emotional harm as a result of Ms. Arnold's harassment, as described in paragraph 109 above, which substantially interfered with their ability to access the curriculum.

120.    Defendant BOE, directly and by and through its agents, servants, and employees, knew of and was deliberately indifferent to Ms. Arnold's harassment of Plaintiff.

121.    Defendant BOE had actual knowledge that Ms. Arnold's misconduct created risks so great that they were almost certain to materialize if they failed to act.

122.    Ms. Arnold acted inappropriately and tortiously with Plaintiff in an open and notorious manner, as indicated by, among other things, assuming guardianship of Plaintiff, persistent and inappropriate touching of Plaintiff on school grounds, and persistent closed-door, one-on-one meetings with Survivor A.

16

123. On information and belief, BOE knew that Ms. Arnold was serially harassing other students within the meaning of Title IX before, during, and after his harassment of Plaintiff.

124. Defendant BOE, directly and through its agents, servants, and employees, including the relevant superintendent of schools and the principal, assistant principals, and other administrative staff at Annapolis High, knew about the harassment of Plaintiff at the time it was happening, and all possessed the authority to take corrective steps, but refused to do so.

125. In fact, the BOE took no action whatsoever to stop Ms. Arnold from harassing, grooming, or assaulting Plaintiff.

126. BOE's inaction empowered Ms. Arnold to continue her abuse of Plaintiff.

127. Defendant BOE's discrimination against and deliberate indifference toward Plaintiff was willful, deliberate, or intentional.

128. The deliberate indifference of Defendant BOE—directly and by and through its employees, including the superintendents and principals who supervised Ms. Arnold, acting at all times under color of law—directly and proximately caused Plaintiff to be denied participation in and equal access to education as required by Title IX.

129. As a direct and proximate cause of Ms. Arnold's abuse, Plaintiff have suffered economic damages and are reasonably anticipated to suffer economic damages in the future, as well as other past and future money damages.

130. The sexual abuse and harassment that Survivor A, suffered at the hands of Ms. Arnold was so severe, pervasive, and objectively offensive that it effectively deprived him of equal access to the educational opportunities and benefits provided by both Annapolis High School and Broadneck High School.

131. Survivor A suffered repeated teacher-on-student sexual assault and harassment, which is considered sexual harassment prohibited by Title IX.

17

132.    The sexual assaults and harassments Survivor A suffered created a hostile environment at both Annapolis High School and Broadneck High School and deprived him of equal access to the educational opportunities and benefits provided by those schools.

133.    BOE had the duty and authority to take corrective action to sufficiently investigate, respond to, and protect Survivor A from further sexual abuse and harassment by Ms. Arnold.

134.    Defendant BOE had actual knowledge of the abuse and harassment that Survivor A suffered.

135.    Actual notice of the sexual abuse and harassment was received through school officials, school administrators, employees and school faculty each of whom had the authority to investigate and address the abuse and harassment and to institute corrective measures but failed to do so.

136.    By its actions and inactions, BOE acted with deliberate indifference toward Survivor A and his rights to a safe and secure education environment and left Survivor A vulnerable to further sexual abuse and harassment by his teacher in the future. These actions and inactions materially impaired Survivor A's ability to pursue his education at Annapolis High School and effectively denied Survivor A access to the educational programs and benefits of all public schooling in the entirety of Anne Arundel County, Maryland all in violation of the requirements of Title IX.

137.    BOE violated the requirements of Title IX of the Education Amendments Act of 1972 (hereinafter "Title IX") by, *inter alia*, the following acts and omissions, all of which were conducted and/or failed to be conducted in deliberate indifference to the rights of Survivor A. guaranteed by Title IX and in reckless and deliberate indifference to the risk of harm posed to Survivor A:

   a.    failing to conduct its own internal investigation of the sexual abuse and harassment of Survivor A;

18

b.  failing to control and monitor the behavior of the abusive teacher and/or failing to take immediate and appropriate corrective action to prevent Survivor A's teacher from committing further sexual abuse and harassment against him;

c.  failing to move Survivor A to other classes or locations and thereby making Survivor A vulnerable to further sexual abuse and harassment and exposing him to a sexually hostile educational environment;

d.  choosing to take no action to protect Survivor A despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent further discrimination, sexual assault, abuse and harassment;

e.  ignoring complaints and concerns about Ms. Arnold's effects on and influence over Survivor A, including but not limited to failing to intervene;

f.  failing to communicate *any* information with Plaintiff's parents pertaining to Ms. Arnold's harassment of Plaintiff;

g.  failing to provide, offer, recommend or coordinate adequate health, psychological, counseling, and academic assistance and services to Survivor A after the sexual abuse and harassment in order to minimize the harm suffered due to the discrimination and harassment including sexual assault and abuse;

h.  failing to develop policies and procedures to address all reports of sexual abuse and harassment to attend to and respond to complaints and information pertaining to abuse of a student by other students;

i.  failing to appoint, designate and publicly identify a Title IX coordinator as required by 34 C.F.R. § 106.8(a) to investigate and communicate the findings of complaints of sexual abuse, and thereby the sexual abuse and harassment committed against Survivor A;

19

j.   failing to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment and sex discrimination complaints in violation of Title IX;

k.   knowingly failing to establish an atmosphere at Annapolis High School in which Survivor A would feel safe, secure and content and be provided with the appropriate and equal opportunity to learn;

l.   failing to provide sufficient training for school staff, employees, workers and representatives pertinent to sexual abuse and harassment of students;

m.   failing to sufficiently train school staff, employees, workers and representatives in Title IX requirements;

n.   failing to terminate or otherwise discipline Annapolis High School employees and agents identified herein including Ms. Arnold and Gelinas for their willful disregard of the safety and rights of Plaintiff, or being deliberately indifferent thereto; and

o.   other acts, omissions and deliberate indifferences that may be disclosed during the course of discovery.

138.   Additionally, school administrators and employees, agents, servants and representatives of BOE and both Annapolis High School and Broadneck High School, including Ms. Arnold, each had authority to take corrective action to respond to the abuse and harassment. BOE, Annapolis High School, Broadneck High School, and Ms. Arnold had actual knowledge that the abuse and harassment had occurred and acted with deliberate indifference by ignoring Plaintiff's parent's requests for updates and information, by failing to take steps to address and control the teacher's behavior to protect Survivor A from future abuse, and by failing to provide Survivor A with any resources to ensure that his educational rights were preserved, among other violations.

139.    BOE's deliberate indifference and lack of response to the occurrences of harassment and sexual abuse was clearly unreasonable, was compounded by the pervasive, offensive and disturbing nature of the abuse and harassment, and effectively denied Survivor A access to educational benefits and opportunities.

140.    The sexual abuse and harassment that Survivor A suffered from severely undermined and detracted from his educational experience and effectively denied him equal access to his school's resources and opportunities. The abuse and harassment had a concrete, negative effect on Survivor A's ability to participate in the educational opportunities and benefits provided by Annapolis High School, Broadneck High School, and all public high schools within the Anne Arundel County school district and resulted in his physical exclusion from all educational programs and activities in the County.

141.    BOE's indifference remained unremedied over a significant period of time and was never addressed by the Board of Education or any of its employees, agents, or representatives.

142.    BOE's deliberate indifference and actions and inactions materially altered the conditions of Survivor A's educational environment and therefore denied Survivor A the full benefits of a public education.

143.    But for suffering sexual abuse and harassment at school and the BOE's and its employees' and representatives' deliberate indifference and failure to abide by Title IX in their response to the abuse and harassment, Survivor A would have received full educational benefits of public schooling in Anne Arundel County, would not have been completely denied a public education in Anne Arundel County and would not have suffered injuries as described in paragraph 109.

144.    As a direct and proximate result of the BOE's actions, inactions and deliberate indifference, Survivor A sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to those enumerated in paragraph 109.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, and enter and order all available appropriate relief, including damages in excess of $75,000 (precise amount to be determined at trial); injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures to prevent BOE teachers, administrators, and staff from grooming and assaulting students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

### COUNT II
### VIOLATIONS OF MARYLAND
### DECLARATION OF RIGHTS
### (Against BOE)

145.    Plaintiff restates, realleges, and incorporate by reference all of the foregoing paragraphs as if fully restated herein.

146.    The tortious acts and omissions of BOE alleged herein constituted violations of rights guaranteed to Plaintiff under the Maryland Declaration of Rights, including but not limited to Article 24 and Article 46 therein.

147.    At all times relevant hereto, BOE employed agents, like Principal Gelinas, to act under the color of state law as principal of Annapolis High School and was tasked with supervision and training of employees, teachers, and school administrators at Annapolis High School in accordance with BOE policies.

148.    At all times relevant hereto, BOE had a duty to train, and failed to train administrators, teachers, staff, employees, agents, representatives, volunteers, and students

concerning BOE policies and procedures pertaining to reporting, investigating, and adequately responding to known or suspected abuse of students like Survivor A.

149.     BOE failed to train administrators, teachers, staff, employees, volunteers, and students about reporting, investigating, and adequately responding to known or suspected abuse of students despite the fact that the need for training was so obvious that a failure to adequately train was likely result in the violation of students' constitutional rights.

150.     BOE's failures to train administrators, teachers, staff, employees, agents, representatives, volunteers, and students effectively denied Survivor A his rights under the Maryland Declaration of Rights, including his right to bodily integrity, substantive due process, procedural due process, and educational property rights.

151.     At all times relevant, BOE had a duty to act reasonably to protect students under their care and custody by instituting and enforcing policies and procedures concerning grooming, sexual harassment, sexual assault, and sexual abuse, so as to prevent harm to students, including Survivor A.

152.     At all relevant times, BOE violated this duty with respect to Plaintiff.

153.     At all relevant times, BOE was tasked with keeping students, including Survivor A, safe and protected while attending school within the public schools of Anne Arundel County.

154.     At all relevant times, BOE had the authority to make, adopt, enforce, and uphold policies regarding the safety of students, specifically Survivor A, to prevent and not increase dangers to students where there were known threats.

155.     Defendant BOE failed to create, implement, enforce, promulgate, and uphold policies pertaining to the prevention and monitoring of sexual abuse of students.

156.     At the time that Defendant BOE became aware of the abuse that Survivor A had or likely had experienced, each had a duty to protect his physical safety and provide safe access to

public education at Annapolis High School and Broadneck High School without exposing Survivor A to further sexual abuse and harassment.

157.    Defendants took no actions to protect Survivor A from future harm and thereby denied him the right to public education by knowingly exposing him to an environment where he was vulnerable to further abuse.

158.    Defendant BOE's conduct and actions violated Survivor A's rights under the Maryland Declaration of Rights.

159.    Defendant BOE allowed an atmosphere of deliberate indifference towards the abuse that Survivor A had experienced which manifested itself in Survivor A being effectively deprived of his right to education and bodily integrity under Maryland law.

160.    Defendant BOE denied Survivor A's rights because of his male sex, because it tortiously permitted and promoted his sexual abuse and harassment at the hands of Ms. Arnold, which was done on account of his sex.

161.    Defendant BOE is vicariously liable for all actions of its employees, including but not limited to Principal Gelinas and teacher Ms. Arnold, with respect to the damages suffered by Plaintiff.

162.    As a direct and proximate result of Defendant BOE's actions, inactions and deliberate indifference, Survivor A sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to those enumerated in paragraph 109.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against Defendant BOE, and enter and order all available appropriate relief, including damages in excess of $75,000 (precise amount to be determined at trial); injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures to prevent BOE teachers, administrators, and staff from grooming and assaulting

students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT III
## NEGLIGENCE (INCLUDING NEGLIGENCE PER SE AND PREMISES LIABILITY)
### (against BOE)

163.   Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

164.   At all relevant times, Defendant owed a duty of care to Survivor A. This duty of care included and exceeded a duty of ordinary care and included a duty to act *in loco parentis*.

165.   At all relevant times, Defendant BOE, directly and by and through its agents, servants, and employees, knew or should have known that Arnold's grooming, harassment, and sexual assault of Plaintiff were occurring, were wrong, and were likely to cause injury.

166.   Plaintiff's welfare and physical custody was entrusted to BOE during the period of time that he attended Annapolis High School and Broadneck High School.

167.   Defendant BOE knew and reasonably should have known that Plaintiff's safety was in jeopardy.

168.   Defendant BOE failed to take reasonable steps to ensure that Plaintiff was safe from sexual abuse.

169.   Defendant BOE, directly and by and through its agents, servants, and employees, was negligent in at least the following ways:

   a.   Failing to recognize circumstances that were likely to lead to child abuse, including Plaintiff's taking up residence with Ms. Arnold and Ms. Arnold sending text messages to Plaintiff using a school-issued cell phone around the clock;

   b.   Failing to report reasonable suspicions of grooming and child abuse to appropriate child protective and law enforcement authorities as required by state law (including,

without limitation Md. Code Ann., Family L. § 5-704 through -705)—before, during, and after the grooming and abuse of Plaintiff;

c.  Hiring Ms. Arnold without conducting a criminal background check;

d.  Failing to fire Ms. Arnold before she harassed and assaulted Plaintiff and on an ongoing basis thereafter;

e.  Failing to prevent the grooming, harassment, and sexual assault of Plaintiff;

f.  Failing to reasonably direct, instruct, supervise, monitor, and train its agents, servants, or employees to ensure prevention and timely and proper reporting of sexual abuse;

g.  Violating applicable statutes, including those requiring reporting of child sexual abuse to child protective services and law enforcement;

h.  Failing to exercise due care to see that the grounds of Annapolis High were reasonably safe for the use of children lawfully on the property, including Plaintiff, where BOE knew and should have known of the unreasonable risk of harm Arnold posed to Plaintiff and children like him, and expected or reasonably should have expected that Plaintiff and other children would not discover or realize the danger Ms. Arnold posed to them and would fail to protect themselves against such danger;

i.  Failing to exercise due care to see that the Arnold's home was reasonably safe for the use of children lawfully on the property, including Plaintiff, where it was being used as a classroom during the COVID-19 pandemic, and where BOE knew and should have known of the unreasonable risk of harm Arnold posed to Plaintiff and children like him, and expected or reasonably should have expected that Plaintiff and other children would not discover or realize the danger Ms. Arnold posed to them and would fail to protect themselves against such danger;

26

j.   Failing to adequately conduct reference checks, background checks, or employment screening and ensure minimum qualifications of agents, servants, or employees, including Arnold and the employees who supervised her;

k.   Failure to formulate, promulgate, enforce, and monitor the enforcement of appropriate policies and procedures to protect children like Plaintiff from sexual abuse; and

l.   Other acts and omissions as may be disclosed during the course of discovery.

170.   BOE is also vicariously liable for the tortious acts and omissions of Arnold herein, because they were made possible by Ms. Arnold's position and role with the BOE and were ratified by BOE. Rather than discipline and fire Ms. Arnold in response to her harassment and abuse of Plaintiff, BOE retained her in employment.

171.   But for the actions and omissions committed by BOE, directly and by and through its agents, servants, and employees, while they were acting within the scope of their employment, Survivor A would not have suffered the injuries and damages alleged herein.

172.   As a direct and proximate result of each of the negligent acts and omissions above, BOE breached its duty and caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 109 above, which entitles him to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against BOE, and enter and order all available appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring BOE to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT IV
## GROSS NEGLIGENCE
### (against BOE)

173.     Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

174.     At all times relevant, BOE was acting under color of law.

175.     By its conduct toward Plaintiff, enumerated *supra*, directly and by and through its agents, servants, and employees, BOE engaged in intentional, willful, and wanton misconduct with reckless disregard for the consequences to Plaintiff.

176.     BOE's gross negligence proximately caused the injuries that Plaintiff sustained.

177.     Had BOE not been grossly negligent, Plaintiff would not have been injured.

178.     BOE's conduct was without legal justification and was improperly motivated by a reckless disregard for the consequences to Plaintiff.

179.     The acts and omissions of the agents, servants, and employees of BOE, including but not limited to those identified above, were committed within the scope of their employment with BOE; thus, BOE is vicariously liable for their grossly negligent acts and omissions committed against Plaintiff.

180.     As a direct and proximate result of each of the grossly negligent acts and omissions described above, BOE breached its duty and was grossly negligent, and caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 109 above, which entitles him to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against BOE, and enter and order all available appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring BOE to institute and enforce sound and effective policies and procedures, supervision, and training to

prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

**COUNT V**
**NEGLIGENT HIRING, SUPERVISION,**
**MONITORING, RETENTION, AND TRAINING**
**(Against BOE)**

181.    Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

182.    BOE, directly and by and through its agents, servants, and employees, had a duty to use reasonable care in hiring, supervision, monitoring, training, and retention for any employees, volunteers, and other individuals who interacted with children or accepted responsibility for children under their care, including Ms. Arnold and those who supervised her.

183.    Defendant BOE systematically breached its to Plaintiff by:

a.    Failing to perform a background check on Ms. Arnold;

b.    Hiring Ms. Arnold despite her conviction for theft, which should have indicated a lack of trustworthiness;

c.    Failing to monitor staff, employees, agents, and teachers, including Ms. Arnold, to ensure that they provided proper care and supervision to children and complied with Defendants' policies and procedures;

d.    Failing to sufficiently monitor minor students to ensure that they were interacting with teachers like Ms. Arnold in a safe and appropriate manner;

e.    Failing to sufficiently train staff and employees, including Ms. Arnold and those who supervised her, on child safety and the prevention and detection of sexual harassment and sexual abuse;

f.   Failing to properly train and re-train teachers and other employees and staff who worked with children to be on the lookout for, prevent, and report conduct that endangered the health and welfare of minors;

g.   Failing to provide a safe environment where children are protected from sexual abuse;

h.   Failing to promptly remove Plaintiff from Ms. Arnold's supervision after the sexual abuse commenced; and

i.   Other negligent actions and omissions as may become apparent in the course of discovery.

184.   It was reasonably foreseeable that if BOE did not adequately fulfill its duty to use reasonable care in hiring, supervision, monitoring, training, and retention for the protection of students, including but not limited to Plaintiff Survivor A, such children would suffer sexual abuse and repeated harm.

185.   As a direct and proximate result of each of the grossly negligent acts and omissions described above, BOE breached its duty and was grossly negligent, and caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 109 above, which entitles him to damages.

186.   Had the Defendant BOE acted in a reasonably prudent manner and not been negligent, Survivor A would not have suffered the injuries complained of herein.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against BOE, and enter and order all available appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring BOE to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students;

allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### (against Defendant BOE)

187.    Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

188.    At all times material to this action, Plaintiff was entrusted by his parents to BOE.

189.    BOE was required to provide Plaintiff with physical care and protection in the same capacity as a reasonably prudent parent.

190.    BOE also maintained a fiduciary relationship of trust and confidence with Plaintiff where the Defendant promised to engage in, and did actively engage in, fostering, promoting, and safeguarding Plaintiff's physical well-being.

191.    BOE had a special, confidential, and fiduciary relationship with Plaintiff. Plaintiff believed in and respected the authority, direction, and instruction from BOE and reasonably believed that BOE would act in his best interests.

192.    BOE taught Plaintiff and others to view teachers, including Ms. Arnold, with utmost respect and confidence and to obey their instructions and commands.

193.    BOE confided the performance of its duty to Plaintiff to Ms. Arnold as its agent, employee, and representative.

194.    As an agent and representative of BOE, Ms. Arnold deepened and affirmed the BOE's fiduciary relationship with Plaintiff, because she singled Plaintiff out and spent time with him under the guise of providing Plaintiff with educational and personal guidance and instruction, while acting under color of law as a teacher on behalf of BOE generally.

195.    Plaintiff placed his trust and confidence in BOE and in Ms. Arnold as its agent and employee, thereby placing BOE in a position of influence and superiority over him.

196.    In addition to BOE's duties in loco parentis, the fiduciary relationship between Plaintiff and BOE created an affirmative duty on the part of BOE to act in Plaintiff's best interest and to protect him, considering his age of minority and vulnerability at all times.

197.    BOE was obligated to do, but failed to do, the following, among other breaches of its duties toward Plaintiff:

      a.    Prevent Ms. Arnold from being placed in a position where she could abuse Plaintiff;

      b.    Provide notice and warning to Plaintiff and his parents that Ms. Arnold was known or suspected to have committed grooming, improper conduct, and sexual assault;

      c.    Intervene to prevent Ms. Arnold's sexual abuse of Plaintiff once it was discovered;

      d.    Reach out to Plaintiff after the abuse ended to disavow Ms. Arnold's representations to Plaintiff that their abuse was in any way allowable or lawful;

      e.    Otherwise exercise its control to prevent and intervene in abuse of Plaintiff and address Plaintiff's abuse by Ms. Arnold after it occurred;

      f.    Disclose its own negligence and wrongdoing to Plaintiff, including its tortious conduct in placing Ms. Arnold in a position where she could sexually abuse Plaintiff, and in failing to act to prevent Ms. Arnold's sexual abuse of Plaintiff, among other tortious acts and omissions;

      g.    Disclose to Plaintiff that he may have one or more causes of action against Defendant;

      h.    Timely address the devastating effects of Ms. Arnold's abuse on Plaintiff by timely offering or securing Plaintiff's emotional, medical, and financial assistance, and holding Ms. Arnold meaningfully accountable;

      i.    Report Ms. Arnold's abuse to local and state child protection, law enforcement, and regulatory authorities; and

      j.    Other violations as may be disclosed during the course of discovery.

198.    As a fiduciary to Plaintiff, Ms. Arnold was duty-bound to protect Plaintiff from harm while he was in her care, speak to him truthfully and without purposeful manipulation, and establish

an appropriate educational relationship with Plaintiff. Ms. Arnold breached this duty by, among other acts and omissions, grooming, harassing, and sexually abusing Plaintiff, and failing to disclose the wrongfulness of her conduct to Plaintiff.

199.    BOE was aware or should have been aware that Ms. Arnold was using the BOE's special relationship with students and the wider community to influence children into believing that grooming and abuse was allowable.

200.    BOE's continued affirmative acts, ratification of, and silence about Ms. Arnold's grooming, harassment, and sexual abuse breached its duty to Plaintiff.

201.    Plaintiff had no reason to suspect that BOE entered into an express or implied scheme of concealment with Ms. Arnold. Plaintiff believed that BOE would not tolerate conduct that was illegal and wrong and that as a teacher, Ms. Arnold would not commit such wrongful acts.

202.    Plaintiff were under no obligation to search for wrongdoing by BOE where he reasonably believed the BOE would uphold its duties to act in Plaintiff's best interest and keep him safe.

203.    It was reasonably foreseeable that if BOE did not fulfill its duties to Plaintiff Survivor A, Plaintiff would suffer rape, sexual abuse, sexual harassment, and repeated harm.

204.    As a direct and proximate result of each of the grossly negligent acts and omissions described above, BOE breached its duty and was grossly negligent, and caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 109 above, which entitles him to damages.

205.    Had the BOE not breached its fiduciary duty, Survivor A would not have suffered the injuries complained of herein.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against BOE, and enter and order all available appropriate

relief, including damages in an amount to be determined at trial; injunctive relief requiring BOE to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT VII
**NEGLIGENCE (INCLUDING NEGLIGENCE PER SE AND PREMISES LIABILITY)**
**(Against Carson Arnold)**

206.    Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

207.    Mr. Arnold owed Plaintiff a duty of reasonable care because Plaintiff was a child invited to reside in a home he co-owned, in the custody of the Arnold family, which deprived him of his normal opportunities for protection.

208.    Mr. Arnold permitted his wife Jennifer Arnold to use his property and chattels, and their jointly owned property and chattels, otherwise than as a servant; (2) lived at the Arnold home until on or about August 2020 with Plaintiff.

209.    Mr. Arnold also owed Plaintiff a duty to prevent Jennifer Arnold from intentionally harming Survivor A and to prevent her from conducting herself as to create an unreasonable risk of bodily and emotional harm to her, because knew or had reason to know he had the ability to control her and knew or had reason to know there was an opportunity to exercise that control.

210.    By inviting and permitting Plaintiff Survivor A to live in their residence, Carson Arnold undertook a duty to protect him and maintain a safe environment free of sexual harassment and assault.

211.    Mr. Arnold had a duty to ensure that Plaintiff Survivor A was not exposed to a sexual predator.

212.    Mr. Arnold, as the co-owner and co-occupier of the real property located at 1586 Chocataw Road, Arnold, MD 21012 had a duty to protect invitees and those residing on his property, including Survivor A, from reasonably foreseeable harm.

213.    Mr. Arnold had a duty to be observant and mindful of any inappropriate conduct exhibited by those in their household.

214.    Ms. Arnold owed a duty to Plaintiff Survivor A to protect him from the harm inflicted upon him by Ms. Arnold during the period in which Plaintiff Survivor A was a resident of the Arnold household and in the custody of the Arnolds.

215.    Mr. Arnold breached his duty to Plaintiff and was negligent in the following ways, among others that may be disclosed during the course of discovery:

    a.      Failing to warn Plaintiff of the danger posed by Ms. Arnold;

    b.      Failing to keep and maintain the premises safe for Plaintiff;

    c.      Failing to inform Plaintiff's family of the danger posed by Ms. Arnold;

    d.      Failing to intervene to stop Ms. Arnold's abuse;

    e.      Failing to report Ms. Arnold's known abuse, or what he suspected or should have suspected regarding the abuse, to child protective services and law enforcement, as required under common law and Maryland statute (Md. Code Ann., Family L. § 5-705); and

    f.      Other negligent acts and omissions that may become apparent during the course of discovery.

216.    As a direct and proximate result of each of the grossly negligent acts and omissions described above, Carson Arnold breached his duty and was grossly negligent, and caused Plaintiff to

suffer harm and compensable injuries, including but not limited to those described in paragraph 109 above, which entitles him to damages.

217.    Had Carson Arnold acted in a reasonably prudent manner and not been negligent, Survivor A would not have suffered the injuries complained of herein.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against all Defendants)**

218.    Plaintiff restates, realleges, and incorporate by reference paragraphs 1–109 as if fully restated herein.

219.    Defendants intentionally engaged in extreme and outrageous conduct by, at a minimum:

   a.   Falsely representing and implying to students, parents, and the general public that Ms. Arnold was safe when she was known or should have been known by Defendant to have groomed and sexually abused children or to have a propensity to groom and sexually abuse children;

   b.   Failing to disclose Ms. Arnold's misconduct to students, parents, and the public;

   c.   Failing to report Ms. Arnold to law enforcement and child protective services;

   d.   Placing Ms. Arnold in a community full of children at Annapolis High, without properly vetting her for work with children and with knowledge of the risk she would engage in misconduct in general and sexual misconduct with a minor in particular;

   e.   Failing to prevent Ms. Arnold from sexually abusing Plaintiff despite having reasonable cause to believe that Ms. Arnold would abuse children like Plaintiff;

   f.   Failing to stop Ms. Arnold from continuing to abuse Plaintiff despite Defendant's actual or constructive knowledge that the abuse was occurring; and

36

g.    Other acts and omissions as may become apparent during the course of discovery.

220.    Defendant knew or should have known that there was a reasonable probability that placing Ms. Arnold at Annapolis High would result in the sexual abuse of students.

221.    As a direct and proximate result of each of the extreme and outrageous acts and omissions described above, BOE caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 109 above, which entitles him to damages.

222.    Had the BOE not engaged in extreme and outrageous conduct, Survivor A would not have suffered the injuries complained of herein.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against BOE, and enter and order all available appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring BOE to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

Dated: May 31, 2024          /s/ Patrick A. Thronson
                             Patrick A. Thronson (#18906)
                             Tara E. Eberly (#14239)
                             Janet, Janet & Suggs, LLC
                             Executive Centre at Hooks Lane
                             4 Reservoir Circle, Suite 200
                             Baltimore, Maryland 21208
                             Phone: 410-653-3200
                             Fax:  410-653-9030
                             E-mail: pthronson@JJSjustice.com