**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| SURVIVOR A, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 24-1571-BAH |
| CARSON C. ARNOLD ET AL., | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Survivor A ("Plaintiff" or "Survivor A"), proceeding anonymously, brought suit against Carson C. Arnold ("C. Arnold"), Anne Arundel County Board of Education (the "School Board" or "BOE"), Bridgitte Hammaker ("Hammaker"), the social worker at Annapolis High School ("AHS"), and Patrick Gelinas ("Gelinas"), the principal of AHS (collectively "Defendants"[1]) asserting claims related to the sexual abuse Plaintiff alleges he suffered at the hands of Jennifer Arnold ("Ms. Arnold"), Plaintiff's AHS English teacher, the then-wife of C. Arnold, and with whom Plaintiff lived. ECF 16 (amended complaint). Pending before the Court are two motions to dismiss, one filed by the School Board, ECF 24, and the other filed by Gelinas and Hammaker, ECF 32.[2] Plaintiff filed a joint opposition to both motions, ECF 35, and Defendants filed a joint reply, ECF 37. The motions include memoranda of law, and the reply includes the

---

[1] C. Arnold filed an answer to the amended complaint. ECF 25. For ease, the Court refers to the moving defendants, the School Board, Hammaker, and Gelinas, as "Defendants" throughout this opinion.

[2] Both motions were filed by the same counsel, and many sections of the motions are identical.

docket sheet of Ms. Arnold's criminal case as an exhibit.[3]  The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).  Accordingly, for the reasons stated below, the School Board's motion is GRANTED IN PART AND DENIED IN PART and Gelinas and Hammaker's motion is GRANTED IN PART AND DENIED IN PART.

## I.    **BACKGROUND**[4]

In the summer of 2017, when Plaintiff was about 13 years old, he moved from his mother's home in Connecticut to his uncle's home in Annapolis so that he could attend school in Maryland after he had experienced bullying while attending his prior school. ECF 16, at 9 ¶¶ 62–64, at 11 ¶ 85.  After a successful eighth grade year, Plaintiff's parents decided to continue his living and schooling arrangement in Maryland, and he enrolled at Annapolis High School for ninth grade beginning September of 2018. *Id.* at 9 ¶ 65.  Plaintiff, by then 14 years old, "was placed by Annapolis High School into a freshman English class taught by Ms. Jennifer Arnold." *Id.* ¶ 66. Plaintiff alleges that "Ms. Arnold began grooming Survivor A for abuse in November 2018," including by "inappropriately touch[ing] and grop[ing] Survivor A over his clothes in a sexual manner, as well as sexually harass[ing] and assault[ing] him on school property." *Id.* ¶ 67.

In May 2019, after Plaintiff began "experiencing trouble with his living situation with his uncle," he "confided [these] personal problems . . . to Ms. Arnold," who was still his English teacher. ECF 16, at 10 ¶ 68.  Plaintiff alleges that Ms. Arnold did not "report[ Plaintiff's] home issues to Survivor A's parents, the proper authorities at Annapolis High School, or to the Anne Arundel County Department of Social Services." *Id.* ¶ 69.  Instead, as of June 2019, Plaintiff

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[4] These facts are taken from the amended complaint, ECF 16, and are presumed true in evaluating the motions to dismiss.

began living with Ms. Arnold and Defendant C. Arnold "in their personal residence, along with their four minor children," in Arnold, Maryland. *Id.*

"The address of Survivor A on file with the BOE and Annapolis High School was changed to Mr. and Ms. Arnold's address," which Plaintiff alleges "put[] AHS and BOE on notice that Survivor A was being left inappropriately alone and residing with his freshman English teacher." ECF 16, at 10 ¶ 72. Plaintiff alleges that "[a]t all relevant times, the principal of AHS, the BOE, and administration at AHS were aware that Survivor A was living with Ms. Arnold" and Plaintiff's living situation "was common and widespread knowledge among teachers, administration, and students at AHS." *Id.* ¶¶ 74–75. "Defendants [Gelinas] [principal of AHS] and Hammaker [social worker at AHS], despite ostensibly being mandatory reporters, did not raise the issue that a child who had been living with a non-parental relative was now essentially homeless, living with a teacher." *Id.* ¶ 70.

For tenth grade (from the fall of 2019 through spring of 2020), Plaintiff enrolled in Broadneck High School, not AHS, at Ms. Arnold's direction. ECF 16, at 11 ¶ 77. Plaintiff alleges this arrangement was made "so he would no longer be at AHS, [and therefore] she would not be as vulnerable to having her misconduct being discovered." *Id.* ¶ 78. Plaintiff enrolled at Broadneck High School "well after the abuse and grooming had begun." *Id.* ¶ 79. Though no longer a student at AHS where Ms. Arnold worked, "Ms. Arnold continued to groom Survivor A for abuse." *Id.* ¶ 80.

On December 12, 2019, Plaintiff alleges that "Ms. Arnold went into the private bedroom of Survivor A, pulled his pants down without his consent, and orally raped him." ECF 16, at 11 ¶ 81. Plaintiff alleges that "Ms. Arnold's abuse of Survivor A rapidly escalated to include rape

through intercourse" on repeated occasions over the next year or so. *Id.* ¶¶ 82–83; *see also, e.g.,* *id.* at 14–15 ¶ 111, at 15 ¶ 114, at 16 ¶ 125.

"In January 2020, Survivor A's mother sent a letter to Ms. Arnold revoking permission for Ms. Arnold to have guardianship. In response, Ms. Arnold coerced Survivor A into communicating that he wanted to remain with the Arnolds and wanted Ms. Arnold to continue being his guardian." ECF 16, at 11 ¶ 84. Plaintiff's mother, who maintained legal custody of Survivor A, then turned to AHS for assistance. In February 2020, Plaintiff's mother "emailed a guidance counselor, a school resource officer, and an administrator at AHS," including at least Defendant Hammaker,[5] "asking to arrange a time to pick him up and take him home to Connecticut." *Id.* at 11–12 ¶¶ 85–87. Plaintiff alleges that "Defendant Hammaker actively frustrated Survivor A's mother's attempts to recover her child" by informing her that "Survivor A was no longer enrolled at [AHS]," but "provid[ing] no further information about Survivor A[]" or his whereabouts. *Id.* at 12 ¶¶ 87–88. "Defendant Gelinas falsely claimed that, because Ms. Arnold had been given limited guardianship over Survivor A, he could not even communicate regarding her child with her." *Id.* ¶ 91. Plaintiff asserts that such a belief was unreasonable and that "[t]o the extent that any school official actually believed that it could not communicate with a legal parent, and indeed could actively frustrate the legal parent's ability to rescue their child, Defendant Board either actively trained those officials improperly or negligently failed to properly train those employees." *Id.* at 12 ¶¶ 93–94.

---

[5] It is unclear from the complaint whether Plaintiff's mother also sent this email directly to Defendant Gelinas. Even so, it is reasonable to infer that he was aware of the email and involved in formulating the response to it. *See* ECF 16, at 12 ¶ 91 ("Specifically, Defendant Gelinas falsely claimed that, because Ms. Arnold had been given limited guardianship over Survivor A, he could not even communicate regarding her child with [Plaintiff's mother].").

As of March 2020, "[t]he abuse [] had been continuing for months, both on and off school property." ECF 16, at 15 ¶ 117. When schools closed in March 2020 as a result of the COVID-19 pandemic, "Defendant BOE specifically informed students, staff, and family that school rules of conduct would apply in the home learning environments." *Id.* ¶ 118. In April 2020, Plaintiff asked that "Ms. Arnold request that he be transferred back to AHS for better social and athletic opportunities." *Id.* ¶ 119. Ms. Arnold initially resisted, sending Plaintiff an explicit text message warning him that re-enrolling at the school that employed the teacher he was having intercourse with was "dangerous," but she ultimately agreed. *Id.* ¶ 120. Ms. Arnold also "sent nude, sexually explicit photographs" to Plaintiff. *Id.* at 14 ¶ 108. Plaintiff alleges that, "[o]n information and belief, supervisory personnel at the BOE maintained and/or regularly accessed cell phone records for Ms. Arnold's phone and had the ability and authority to do so." *Id.* ¶ 106.

Plaintiff alleges that he suffered physical and verbal abuse by Defendant C. Arnold stemming from "jealousy and anger" as a result of the "excessive attention that Ms. Arnold was giving to Survivor A." ECF 16, at 11 ¶ 76 (alleging that "[o]n one evening in July 2019, during a boating outing, Defendant Mr. Arnold threw a boating pole at Survivor A"); *id.* at 15 ¶ 115 ("On or about March 11, 2020, Mr. Arnold came home in an intoxicated state and confronted Survivor A, asking words to the effect of 'what are you doing with my wife?' Survivor A, fearful, denied that anything inappropriate was occurring."). In May 2020, Defendant C. Arnold texted Plaintiff:

> [P]lease leave my home immediately and return to your parents in Connecticut. I do not want you living at my house and your mother and father want you back home with them. Your continued presence is destroying my family and our future together. I'm not sure if you were made aware by Jen that your mother has been seeking your return, but she has and still does.

*Id.* at 16 ¶ 122. Plaintiff alleges that "Mr. Arnold never reported to authorities or Survivor A's parents that Ms. Arnold was or may be abusing Survivor A." *Id.* ¶ 123. "By August 2020, Mr.

5

Arnold had stopped living at the residence." *Id.* ¶ 124. Meanwhile, Ms. Arnold's sexual abuse of Plaintiff continued. *See id.* ¶ 125.

In January 2021, Plaintiff "told his father to revoke Ms. Arnold's guardianship." ECF 16, at 17 ¶ 131. "In February 2021, Survivor A's mother petitioned the court to revoke guardianship." *Id.* ¶ 132. Even after Plaintiff "returned to live with his father in New York in February 2021," "Ms. Arnold continued to manipulate and sexually harass Survivor A by phone, demanding money and attention . . . ." *Id.* ¶¶ 133–34. The Anne Arundel County Police and Department of Social Services first learned of Ms. Arnold's sexual abuse of Plaintiff on July 6, 2021. *Id.* ¶ 135. Plaintiff was interviewed by police on July 29 and disclosed the abuse to them and to his parents. *Id.* ¶¶ 136–37.

Plaintiff's amended complaint includes the following claims: (1) violation of Title IX, 20 U.S.C. § 1681, against the School Board (Count I); (2) violation of the Maryland Declaration of Rights against the School Board (Count II); (3) negligence (including under theories of negligence per se and premises liability) against the School Board (Count III); (4) gross negligence against the School Board (Count IV); (5) negligent hiring, supervision, monitoring, retention, and training against the School Board (Count V); (6) breach of fiduciary duty against the School Board (Count VI); (7) negligence (including under theories of negligence per se and premises liability) against C. Arnold (Count VII); (8) intentional infliction of emotional distress ("IIED") against C. Arnold, the School Board, Hammaker, and Gelinas (Count VIII); (9) a claim under 42 U.S.C. § 1983 for violation Plaintiff's Title IX rights against Hammaker and Gelinas (Count IX); and (10) a § 1983 claim for violation of Plaintiff's Fourteenth Amendment equal protection rights against Hammaker and Gelinas. *See* ECF 16.

## II.    LEGAL STANDARD

Both motions are brought under Federal Rule of Civil Procedure 12(b)(6).  *See* ECF 24-1, at 3–4; ECF 32-1, at 3–4.  Rule 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted."  In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

While Defendants have not moved under Rule 12(b)(1), they assert a sovereign immunity defense, *see* ECF 24-1, at 7–9; ECF 32-1, at 8–10, which is typically evaluated under Rule 12(b)(1) as it is a jurisdictional question, *see Jackson Creek Marine, LLC v. Maryland*, --- F.4th ---, No. 24-1788, 2025 WL 2525855, at *3 (4th Cir. Sept. 3, 2025).[6]  "[I]f a defendant successfully

---

[6] The Fourth Circuit recently described sovereign immunity as "an odd jurisdictional bar" because it "has some of the characteristics of both types of jurisdiction"—subject matter and personal jurisdiction. *Jackson Creek Marine*, 2025 WL 2525855, at *3 n.4.  "The sovereign may waive it, like a personal jurisdiction bar."  *Id.* (citing *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S.

demonstrates their sovereign immunity, a court necessarily lacks subject matter jurisdiction over the claims against them." *Doe v. Norfolk State Univ.*, No. 2:23CV470, 2025 WL 2406751, at *2 (E.D. Va. Aug. 19, 2025) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987, 990 (4th Cir. 1997)).

## III.    ANALYSIS

As noted, Defendants' arguments overlap substantially across both motions, so the Court will consider them together. First, Defendants argue that the School Board and Defendant Gelinas are entitled to sovereign immunity on Count I (the Title IX claim) of Plaintiff's amended complaint.[7] *See* ECF 24-1, at 7–9; ECF 32-1, at 8–10. While Defendants title their argument as one asserting sovereign immunity, the bulk of the argument concerns whether the School Board, or its employees sued in their official capacities, are "persons" under 42 U.S.C. § 1983.[8] *See* ECF 24-1, at 7–9; ECF 32-1, at 8–10. Defendants also argue that a Title IX claim cannot be brought against individuals like Hammaker and Gelinas, so Count IX must also be dismissed. *See* ECF 24-1, at 9; ECF 32-1, at 10. Next, Defendants argue that Count I, brought against the School Board, and Count IX, the § 1983 claim brought against Hammaker and Gelinas for violations of Title IX, should be dismissed as to all Defendants for failure to state a claim. ECF 24-1, at 9–11; ECF 32-1, at 10–13. Next, the School Board argues that Count II, alleging violation of the Maryland Declaration of Rights, fails "as a matter of law" because the allegations relating to equal

---

482, 500 (2021)). "But the sovereign may also assert sovereign immunity for the first time on appeal, much like a subject matter jurisdiction bar." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)).

[7] Count I is brought only against the School Board. *See* ECF 16, at 18.

[8] Count I is brought as a direct Title IX claim pursuant to 20 U.S.C. § 1681, not through 42 U.S.C. § 1983. *See* ECF 16, at 18–25 ¶¶ 142–78. Counts IX and X, brought only against Defendants Gelinas and Hammaker, are the only claims brought under § 1983. *See id.*, at 42–45; ¶¶ 257–85.

protection under the law are too conclusory to state a claim under the federal pleading standards laid out in *Iqbal*.[9]  *See* ECF 24-1, at 12.  Similarly, Gelinas and Hammaker argue that the Fourteenth Amendment claim brought against them pursuant to § 1983 (Count X) should be dismissed because "the conduct complained of was committed by Ms. Arnold, not Defendant Gelinas or Defendant Hammaker; and the alleged deprivation was the result of Ms. Arnold's conduct."  *See* ECF 32-1, at 13–14.

As to the state common law tort claims, the School Board argues that Count III, the negligence claim, must be dismissed as a matter of law because the School Board does not owe a duty to Plaintiff and that, even if it did, the amended complaint fails to allege a breach of that duty.  *See* ECF 24-1, at 13–14. As to the gross negligence claim brought against the School Board (Count IV), it argues that the elements have not been sufficiently specifically pled, and that the facts pled are too conclusory.  *Id.* at 14–15.  The School Board similarly argues that Count V, the negligent hiring, supervision, monitoring, retention, and training claim, must be dismissed because the allegations are too conclusory and fail to meet the elements to state such a claim.  *Id.* at 15–16. The School Board also argues that Plaintiff has not identified a fiduciary duty owed to Plaintiff by the School Board, and that Plaintiff has otherwise failed to plead with sufficient detail the elements of a breach of fiduciary duty claim such that Count VI could survive.  *Id.* at 16–17.  Defendants also argue that the IIED claim brought should be dismissed as to them because Plaintiff has not

---

[9] The School Board argues that Plaintiff has not made out a claim under either Article 24 or Article 46 of the Maryland Declaration of Rights. *See* ECF 24-1, at 12–13. Plaintiff's amended complaint omits any reference to Article 46, *compare* ECF 1, at 22 ¶ 146 (original complaint citing Article 24 and Article 26), *with* ECF 16, at 26 ¶ 180 (amended complaint citing only Article 24), so the Court need not determine whether Plaintiff has stated a claim against the School Board under Article 46.

sufficiently alleged knowledge or deliberate or intentional acts by Defendants.[10] *See* ECF 24-1, at 17–18; ECF 32-1, at 14–15.

Finally, the School Board argues that it should be dismissed from this suit because it "can only be named as a defendant [ ] to indemnify any judgment rendered against the alleged tortious acts of [its] employees ... within the scope of their employment without malice or gross negligence pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-518." ECF 24-1, at 18–19.

Plaintiff opposes each of these arguments. *See generally* ECF 35. Specifically, Plaintiff asserts that Defendants are not immune from suit under § 1983 and that the legislature has specifically waived the School Board's Eleventh Amendment sovereign immunity for these kinds of claims. ECF 35, at 7–12. Plaintiff contends that he has sufficiently alleged Defendants' knowledge of Ms. Arnold's sexual abuse of Plaintiff that can support a supervisory claim under § 1983. *Id.* at 13. Plaintiff asserts that his Title IX claim (brought directly against the School Board) and the § 1983 claim for violation of his Title IX rights (brought against Hammaker and Gelinas) have been sufficiently pled and are viable claims. *Id.* at 13–16. He also asserts that he has sufficiently pled the claims under the Maryland Declaration of Rights, *id.* at 16–17, and for his negligence, gross negligence, breach of fiduciary duty, and negligent hiring, supervision and retention, *id.* at 17–20, 23–24. Plaintiff further contends that Defendants Gelinas and Hammaker are liable in tort and under § 1983 for their own actions. *Id.* at 22–23. Finally, Plaintiff contends that he has properly pled the IIED claim against all Defendants. *Id.* at 24–25.

---

[10] Defendant C. Arnold has not moved to dismiss this claim against him.

### A.    Sovereign Immunity

The Court begins by addressing Defendants' argument that the School Board and its employees acting in their official capacity are protected by sovereign immunity.[11]  The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see also Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Separately, states also possess sovereign immunity as "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they [generally] retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States)[.]" *Alden v. Maine*, 527 U.S. 706, 713 (1999); *see also id.* at 728 (noting "a settled doctrinal understanding, consistent with the views of the leading advocates of the Constitution's ratification, that sovereign immunity derives not from the Eleventh Amendment but from the structure of the

---

[11] As an initial matter, Defendants appear to assert the sovereign immunity defense only in the context of Count I.  *See* ECF 24-1, at 7–9; ECF 32-1, at 8–10; ECF 37, at 6–9.  Further, they do not appear to invoke other forms of immunity.  In the motions' "statement of the case" sections, Defendants assert that they are entitled to public official immunity on Plaintiff's negligence claims against the School Board "because school principals and school system superintendents are public officials," ECF 24-1, at 3, and on Plaintiff's Fourteenth Amendment brought against Defendant Gelinas" because "school principals are public officials," ECF 32-1, at 3.  In reply, they contend that "Plaintiff does not contest the immunities asserted by School Board Defendants except those asserted against his claims under 42 U.S.C. § 1983." ECF 37, at 6.  However, Defendants do not address public official immunity anywhere else in their motions beyond the single sentence references in the introductory sections.  Thus, rather than Plaintiff failing to contest these immunity defenses, the Court is not convinced Defendants ever actually asserted them.  "A party waives an argument by failing to present it in its opening brief or by failing to 'develop [its] argument—even if [its] brief takes a passing shot at the issue.'" *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (alterations in original) (internal quotation marks omitted) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) (Agee, J., dissenting)); *United States ex rel. Schnupp v. Blair Pharmacy*, Civ. No. ELH-17-2335, 2025 WL 2306250, at *17 (D. Md. Aug. 11, 2025) (finding that the same principle applies at the district court level).  As such, the Court will not evaluate public official immunity.

original Constitution itself"). "A State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002). "[T]he Supreme Court long ago decided that the question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (alteration in original) (quoting *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)).

Helpfully, "[i]n its *Zimmer-Rubert* decision, Maryland's highest court considered and resolved the question of whether the immunity provision waives a county board of education's Eleventh Amendment immunity." *Id.* at 252 (citing *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 973 A.2d 233 (Md. 2009)).[12] The Supreme Court of Maryland (then called the Court of Appeals of Maryland) held that "[Md. Code Ann., Cts. & Jud. Proc.] § 5-518(c) embraces all claims, thereby effecting a waiver of sovereign immunity" in cases seeking damages of $100,000, the statutory maximum at the time, and "that the statute effects a waiver of the Board's Eleventh Amendment immunity." *Zimmer-Rubert*, 973 A.2d at 242.

A more recent version of the same waiver statute is implicated here. Section 5-518(c) now reads:

---

[12] *Zimmer-Rubert* rests on the premise that a Maryland county school board is an arm of the state. *See* 973 A.2d at 236 (noting that "there is no contention that the Board is not a State agency entitled to governmental immunity" and collecting cases so finding). More recently, the Supreme Court of Maryland has "made clear that a county school board is, in certain contexts, an arm of the State." *Neal v. Balt. City Bd. of Sch. Comm'rs*, 225 A.3d 66, 69 (Md. 2020) (citing *Donlon v. Montgomery Cnty. Pub. Sch.*, 188 A.3d 949, 959–61 (Md. 2018)). "Sovereign immunity is one such context in which a county school board is considered an arm of the State." *Id.* (citing *Donlon*, 188 A.3d at 960, 963–64, 968; *Beka Indus., Inc. v. Worcester Cnty. Bd. of Educ.*, 18 A.3d 890, 900 (Md. 2011)). Thus, Plaintiff's argument to the contrary is unavailing. Nevertheless, as discussed above, the state legislature has waived such sovereign immunity to a limited extent in cases such as this.

(1) Except as provided in paragraph (2) of this subsection, a county board of education may not raise the defense of sovereign immunity to any claim of $400,000 or less.

(2) If liability of a county board of education *arises under one or more claims of sexual abuse*, as defined in § 5-117 of this title,[13] that occurred when the claimant was a minor:

(i) Except as provided in item (ii) of this paragraph, the liability may not exceed $890,000 to a single claimant for injuries arising from the claim or claims; and

(ii) For an action filed on or after June 1, 2025, that would have been barred by a time limitation before [O]ctober 1, 2023, the liability may not exceed $400,000 to a single claimant for injuries arising from the claim or claims.

§ 5-518(c) (emphasis added). Defendants' response to this statute is that "Md. Code Ann. Cts. & Jud. Proc. § 5-518 is not a 'general waiver of sovereign immunity.'" ECF 37, at 8 (emphasis removed) (quoting *Zimmer-Rubert v. Bd. of Educ. of Balt. Cnty.*, 947 A.2d 135, 149 (Md. App. 2008), *aff'd*, 409 Md. 200, 973 A.2d 233 (2009)). Even if the intermediate appellate court's opinion in *Zimmer-Rubert* supports Defendants' position, Defendants' argument is difficult to square with the fact that in a subsequent decision in the very same case the Supreme Court held that § 5-518(c) specifically waives sovereign immunity "for a county board of education" subject

---

[13] Section 5-117 defines "sexual abuse" as "any act that involves":

(1) An adult allowing or encouraging a child to engage in:
    (i) Obscene photography, films, poses, or similar activity;
    (ii) Pornographic photography, films, poses, or similar activity; or
    (iii) Prostitution;
(2) Incest;
(3) Rape;
(4) Sexual offense in any degree; or
(5) Any other sexual conduct that is a crime.

Md. Code Ann., Cts. & Jud. Proc. § 5-117(a).

to the relevant statutory cap.[14] *See Zimmer-Rubert*, 973 A.2d at 242; *see also Neal v. Balt. City Bd. of Sch. Commissioners*, 225 A.3d 66, 69 (Md. 2020) (noting that § 5-518(c) "makes a county school board potentially liable through a limited waiver of sovereign immunity"); *Roman Cath. Archbishop of Washington v. Doe*, 330 A.3d 1069, 1077 n.6 (Md. 2025) (noting that, among other things, "[s]ection 5-518 of the Courts and Judicial Proceedings Article provides a limited waiver of a city or county board of education's sovereign immunity from tort claims"). As such, the Court declines to grant Defendants' motions to dismiss Count I on immunity grounds.

**B.      Count I: Title IX Claim Against the School Board**

Plaintiff brings Count I directly against the School Board under 20 U.S.C. § 1681. *See* ECF 16, at 18. As noted, Defendants' argument on this count focuses almost entirely on whether the School Board is a person under § 1983. *See* ECF 24-1, at 7–9; ECF 32-1, at 8–10. But Count I is not brought under § 1983. *See supra* note 8. Thus, the Court will address whether Defendant Gelinas, acting in his official capacity, is a "person" for purposes of § 1983 below in the context of Counts IX and X.

On the merits, the School Board argues that Plaintiff has not stated a claim under Title IX. A Title IX claim for sexual harassment or assault contains four elements: (1) the plaintiff "was a student at an educational institution receiving federal funds," (2) the plaintiff "was subjected to harassment based on [his] sex," (3) "the harassment was sufficiently severe or pervasive to create

---

[14] The parties here have not briefed the relevant statutory cap, but the answer to that question does not affect the Court's conclusion that the complaint should not be dismissed on sovereign immunity grounds. *See Lewis v. Prince George's Cnty. Bd. of Educ.*, Civ. No. JKB-21-2720, 2024 WL 4711809, at *6 (D. Md. Nov. 6, 2024) (discussing the possible relevant statutory caps but not deciding which applied in denying a county school board's motion to dismiss based on sovereign immunity); *see also Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 509 (D. Md. 2011); *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, Civ. No. CBD-08-3327, 2010 WL 481333, at *3 (D. Md. Feb. 5, 2010), *aff'd*, 666 F.3d 244 (4th Cir. 2012).

a hostile (or abusive) environment in an educational program or activity," and (4) "there is a basis

for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir.

2007) (en banc). The School Board does not appear to contest the first three elements, focusing

its argument instead on its contention that fault cannot be imputed to it based on Ms. Arnold's

sexual abuse of Plaintiff. *See* ECF 24-1, at 9–11. A recipient of federal education funding (like a

school district) "intentionally violates Title IX, and is subject to a private damages action, where

the recipient is deliberately indifferent to known acts of teacher-student discrimination." *Davis*

*Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

Deliberate indifference in this context requires that "an official who at a minimum has

authority to address the alleged discrimination and to institute corrective measures on the

recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails

adequately to respond."[15] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *see*

---

[15] There appears to be some dispute in the caselaw whether a school principal qualifies as an "appropriate person." In *Baynard v. Malone*, the Fourth Circuit found that a Virginia principal was not an appropriate person because under the state's statutory delegation of authority, school principals did not have "the power to hire, fire, transfer, or suspend teachers." 268 F.3d 228, 239 (4th Cir. 2001). More recently, the Fourth Circuit has cast doubt on *Baynard*'s veracity in the wake of *Jennings*. *See Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 269 (4th Cir. 2021) (citing numerous reports of sexual harassment to assistant principal and other school officials as reports sufficient to meet the notice requirement); *see also Doe v. Bd. of Educ. of Prince George's Cnty.*, 605 F. App'x 159, 165 (4th Cir. 2015) ("[L]iability may be imputed to an educational entity (such as the Board) premised on the actual knowledge of a school official (like [the school principal]) . . . ."). Subsequently, this Court has determined that principals are appropriate people under this standard. *See Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 661 (D. Md. 2021) (finding that "[c]ertainly, principals . . . are considered appropriate officials" with the requisite authority to state a Title IX claim (citing *Fairfax Cnty.*, 1 F.4th at 270–72)); *Andrews, next friend of S.H. v. Bd. of Educ. of Prince George's Cnty.*, 513 F. Supp. 3d 648, 656 n.8 (D. Md. 2021) ("Even if the Board had not conceded that [the principal] was an 'appropriate person' as soon as [the allegedly abusive teacher] became a volunteer, the Court is persuaded that the less stringent *Jennings* standard would apply [rather than *Baynard*] and establish that she was."); *Robinson v. Bd. of Educ. of Washington Cnty.*, Civ. No. 22-1102-ELH, 2023 WL 2499854, at *8 (D. Md. Mar. 14, 2023) ("Certainly, principals and assistant principals are considered appropriate

*also Doe v. N.C. State Univ.*, 125 F.4th 498, 503 (4th Cir. 2025). "Actual notice does not mean

that a claim has been accepted as credible or substantiated, but rather, it is an objective inquiry that

asks whether an appropriate official in fact received a report or complaint and whether a reasonable

official would determine that the report alleges misconduct." *Willey v. Bd. of Educ. of St. Mary's*

*Cnty.*, 557 F. Supp. 3d 645, 661 (D. Md. 2021) (citing *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257,

268 (4th Cir. 2021)).

    The School Board argues that Plaintiff has not met this standard because "[t]here are

absolutely no substantive allegations in the Amended Complaint that Defendant School Board was

ever informed or told that Ms. Arnold had ever engaged in sexually abusing Plaintiff or any other

student until after the sexual relationship ended and the two were separate and apart from one

another." ECF 24-1, at 11.

    Plaintiff has alleged that the abuse began when Plaintiff was a student in Ms. Arnold's

class and that it continued on (and off) school property,[16] ECF 16, at 9 ¶ 67, and that administrators,

teachers, the principal of AHS, School Board employees, and fellow students knew that Plaintiff

lived with the Arnolds, *id.* at 10 ¶¶ 74–75. Plaintiff also alleges that the Board, "through its agents,

servants, and employees, had actual knowledge of Survivor A's harassment and abuse while it was

---

officials." (citing *Fairfax Cnty.*, 1 F.4th at 270–72). Regardless, Defendants have not raised this
point, so the Court need not definitively resolve it.

[16] Plaintiff alleges that while Plaintiff was living with the Arnolds, "[t]he Maryland State
Superintendent closed all Maryland schools through April 24, 2020, in response to the covid-19
[sic] global pandemic . . . ." ECF 16, at 15 ¶ 116. "Defendant BOE specifically informed students,
staff, and family that school rules of conduct would apply in the home learning environments." *Id.*
¶ 118. In the context of institutions of higher education, "some courts have extended liability off-
campus when the educational institution regulates the relevant locations and enforces disciplinary
rules." *Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 567 (4th Cir. 2025). Others,
though, "have declined to impose Title IX liability where sexual harassment incidents occurred at
locations outside the educational institution's oversight, particularly when the institution lacked
notice of prior misconduct." *Id.* at 568.

occurring" and that the individual defendants, employed by the School Board, "knew, or at the very least should have known, of Ms. Arnold's harassment and abuse." *Id.* at 16 ¶¶ 126–27. After Plaintiff's mother "emailed a guidance counselor, a school resource officer, and an administrator at AHS," including the individual school official defendants, the school employees did not provide Plaintiff's mother and legal custodian with information regarding Plaintiff's whereabouts or wellbeing. *See id.* at 11–12 ¶¶ 85–91. Further, Ms. Arnold sent Plaintiff sexually explicit text messages and images from her School Board-issued phone, which, "[o]n information and belief," Plaintiff alleges the School Board "had the ability and authority" to access. *Id.* at 14 ¶¶ 105–06, at 15 ¶ 120. Plaintiff further alleges that "[o]n information and belief, BOE knew that Ms. Arnold was serially harassing other students within the meaning of Title IX before, during, and after his harassment of Plaintiff." *Id.* at 20 ¶ 156.

The Fourth Circuit has concluded that, in the context of a university, a report to the athletic director that a trainer "was engaging in what [the informant] suspected was sexual grooming of male student-athletes . . . 'can objectively be construed as alleging sexual harassment.'" *N.C. State Univ.*, 125 F.4th at 505 (additional quotation marks omitted) (quoting *Fairfax Cnty.*, 1 F.4th at 265). Relevant here, the Fourth Circuit also held that, "at the pleading stage, an allegation that such a report was made to an appropriate official is sufficient to plausibly plead that an institution had actual notice of sexual harassment." *Id.* Another judge of this Court has declined to dismiss a Title IX claim alleging student-on-student harassment where the complaint alleged the student's parents informed a teacher that they were concerned about their daughter's wellbeing and alleged that the defendant school employees "would have specifically observed" the harassing behavior. *See Willey*, 557 F. Supp. 3d at 661–62; *see also Robinson v. Bd. of Educ. of Washington Cnty.*, Civ. No. 22-1102-ELH, 2023 WL 6643373, at *3, *13 (D. Md. Oct. 12, 2023) (hereinafter

*Robinson II*) (finding a plaintiff had sufficiently alleged deliberate indifference and notice when she alleged that the principal and teacher had found nude photos of the minor student on her school iPad, that the student later told her mother that another student had told her to take the photos, that a Child Protective Services Officer had discovered more pictures depicting sexual abuse of the student, and the student's mother "attempted to contact [the principal] to obtain more information" but never heard back), *appeal dismissed sub nom. Robinson v. Peake*, No. 23-2149, 2024 WL 5672845 (4th Cir. Dec. 30, 2024).

Taking Plaintiff's allegations together and viewing the amended complaint in the light most favorable to Plaintiff, as the Court must at this stage of the litigation, the allegations raise an inference that a School Board employee with the requisite authority had actual knowledge of the abuse and failed to correct it. *See Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (noting that on a motion to dismiss, courts "'accept as true' the 'allegations for which there is sufficient factual matter to render them plausible on [their] face'" (additional internal citation marks omitted) (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017))). And as in *Willey*, Plaintiff here is permitted to plead allegations "on information and belief," if he is "likely to obtain evidentiary support for them upon being afforded an opportunity for further investigation or discovery." 557 F. Supp. 3d at 662.

In their reply, Defendants argue that "no defendant in this case has been linked or tied to Plaintiff's allegations of rape and/or sexual abuse as the Amended Complaint only recites and identifies allegations of the wrongful actions of Ms. Arnold." ECF 37, at 4.[17] This argument is

---

[17] Defendants also note that

> Ms. Arnold is actually a "sex offender," and not a "rapist" as Plaintiff intentionally mischaracterizes her criminal conviction for the attempted narrative that Plaintiff is a sympathetic and helpless victim as opposed to him being a high school football

unavailing. "[W]hether viewed as 'discrimination' or 'subject[ing]' students to discrimination, Title IX '[u]nquestionably ... placed on [the Board] the duty not' to permit teacher-student harassment in its schools[.]" *Davis*, 526 U.S. at 643. (alterations in *Davis*) (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992)).

Defendants are correct that simply pleading that the School Board *should have known* about the abuse does not meet the standard. *See* ECF 24-1, at 10; *N.C. State Univ.*, 125 F.4th at 505 ("Reports that support only 'a general, *substantial risk* of—or the *potential* for—ongoing or future misconduct' cannot provide actual notice of 'current [sexual harassment].'" (alterations in *N.C. State Univ.*) (quoting *Fairfax Cnty.*, 1 F.4th at 265)). And while the amended complaint does allege that officials "should have known" about the abuse, Plaintiff's claim does not actually rest entirely on what the School Board should have known, but rather explicitly alleges that officials *did* know about it. *See* ECF 16, at 16 ¶ 127 ("Each of the BOE employee Defendants *knew*, or at the very least should have known, of Ms. Arnold's harassment and abuse." (emphasis added)). At this stage, the Court must accept this allegation as true. *See Hutton*, 892 F.3d at 620.

Because Plaintiff's allegations raise a plausible claim that the School Board knew of Ms. Arnold's sexual abuse of Plaintiff and was deliberately indifferent to that fact, Count I—the Title IX claim against the School Board—will proceed to discovery.

---

> player that participated in an inappropriate relationship with his parental guardian with whom he chose to stay with.

ECF 37, at 4. Regardless of the nomenclature used to describe his teacher, the allegations raised by Survivor A reflect that he was a minor when the teacher began grooming him for sex and did, in fact, engage in sex acts with him while he was still a minor. Thus, the relevance to the pending motions of any distinction between calling the teacher a "rapist" or a "sex offender," even assuming the distinction is technically accurate, is unclear to the Court.

## C.    State Common Law Claims

### 1.    Count III: Negligence Against the School Board

In Count III, Plaintiff brings a claim for negligence against the School Board. ECF 16, at

28. "In order to prevail on a claim of negligence in Maryland, a plaintiff must prove the existence

of: (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty, and (c) injury

proximately resulting from that breach." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012) (citing

*Pendleton v. State,* 921 A.2d 196, 202–03 (Md. 2007)).  The School Board argues "there is no

substantive evidence demonstrating foreseeability," so it did not owe a duty to Plaintiff.  ECF 24-

1, at 13.  Even if the Court were to find that Plaintiff has alleged that the School Board did indeed

owe him a duty, the School Board argues that the amended complaint fails to allege a breach of

that duty because "there are no specific facts asserted demonstrating that Defendant School Board

or any of its employees failed to act and/or failed to protect Plaintiff from harm at the hands of Ms.

Arnold" such that the Board can be said to have breached that duty. *Id.* at 13–14.

The School Board's argument rests on a conflation of the elements of a Title IX claim and

a negligence claim. *See* ECF 24-1, at 13 (contending that in analyzing a claim for negligence, "the

standard of liability for Defendant School Board is the deliberative [sic] indifference standard").

Despite the School Board's contention, the caselaw does not bear out that the "Defendant School

Board must have actual knowledge for their duty to protect a student to be triggered," *id.*, for a

plaintiff to state a negligence claim.[18]  "Although there is generally no duty to protect others from

---

[18] The School Board asserts that its "liability cannot be premised upon *respondeat superior* or negligence." ECF 24-1, at 13 (citing *Doe 4 v. Freeburg Comm. Consolidated Sch. Dist.*, 279 F. Supp. 3d 807, 813 (S.D. Ill. 2017)).  In the case the School Board cites, however, the Southern District of Illinois clarifies that a *Title IX* claim cannot be premised on *respondeat superior* or negligence. *See Doe 4*, 279 F. Supp. 3d at 813 (citing, e.g., *Davis*, 526 U.S. at 642).  That case does not evaluate a standalone negligence claim, let alone one brought under Maryland law.

third parties' conduct, such a duty may arise in the presence of a special relationship." *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) (citing *Rhaney v. Univ. of Md. E. Shore,* 880 A.2d 357, 364 (Md. 2005)). "In certain circumstances, a special relationship exists between a school district and its students." *Id.* (citing *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.,* 903 F.2d 988, 993 (4th Cir. 1990)). "[I]t is undisputed that a school has a duty 'to exercise reasonable care to protect a pupil from harm.'" *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 281 A.3d 876, 899–900 (Md. 2022) (quoting *Lunsford v. Bd. of Educ. of Prince George's County,* 374 A.2d 1162 (Md. 1977)). Maryland courts have "recognized 'the doctrine that the relation of a school vis a vis a pupil is analogous to one who stands in *loco parentis*, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm.'" *Id.* (quoting *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 597 A.2d 447, 451–52 (Md. 1991)).

Given this special relationship, other courts facing similar claims have found that a school board owes a plaintiff student a duty of care, at least at the pleading stage. *See Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d at 669 (finding "it [ ] plausible that the Board owed J.D. a duty to protect him from Classmate's conduct" given "the frequency of the complaints [to school officials], the egregiousness of the alleged sexual improprieties, and [the school officials'] elevated statuses"); *Robinson v. Bd. of Educ. of Washington Cnty.*, Civ. No. 22-1102-ELH, 2023 WL 2499854, at *17 (D. Md. Mar. 14, 2023) (hereinafter *Robinson I*) (rejecting argument that school board does not owe a duty on a motion to dismiss a negligence claim where "plaintiffs have pleaded that the defendants owed a duty of care to A.T., a six-year-old student, because she was entrusted to defendants' care for educational purposes"). Plaintiff has plausibly alleged that the School Board owed him a duty of care, and the negligence claim will not be dismissed on this basis. *See, e.g.,* ECF 16, at 28 ¶ 198 ("At all relevant times, Defendant owed a duty of care to

Survivor A.. [sic] This duty of care included and exceeded a duty of ordinary care and included a duty to act *in loco parentis*."); *id.* at 29 ¶ 200 ("Plaintiff's welfare and physical custody was entrusted to BOE during the period of time that he attended Annapolis High School and Broadneck High School.").

Next, the School Board argues: "There are no allegations that any employee of Defendant School Board was present and/or witnessed any wrongdoing, or that any such employee was told or informed of the wrongdoing and failed to report such information and/or failed to adequately respond with knowledge of such wrongdoing." ECF 24-1, at 14. Despite the School Board's argument otherwise, the Court finds that Plaintiff has alleged sufficient facts to plausibly raise a negligence claim under *Twombly/Iqbal* pleading standards. Plaintiff alleges that the School Board, "directly and by and through its agents, servants, and employees, was negligent in at least the following ways:

    a.  Failing to recognize circumstances that were likely to lead to child abuse, including Plaintiff's taking up residence with Ms. Arnold and Ms. Arnold sending text messages to Plaintiff using a school-issued cell phone around the clock;

    b.  Failing to report reasonable suspicions of grooming and child abuse to appropriate child protective and law enforcement authorities as required by state law (including, without limitation Md. Code Ann., Family L. § 5-704 through -705)—before, during, and after the grooming and abuse of Plaintiff;

    c.  Hiring Ms. Arnold without conducting a criminal background check;

    d.  Failing to fire Ms. Arnold before she harassed and assaulted Plaintiff and on an ongoing basis thereafter;

    e.  Failing to prevent the grooming, harassment, and sexual assault of Plaintiff;

    f.  Failing to reasonably direct, instruct, supervise, monitor, and train its agents, servants, or employees to ensure prevention and timely and proper reporting of sexual abuse;

g.  Violating applicable statutes, including those requiring reporting of child sexual abuse to child protective services and law enforcement;

h.  Failing to exercise due care to see that the grounds of AHS were reasonably safe for the use of children lawfully on the property, including Plaintiff, where BOE knew and should have known of the unreasonable risk of harm Arnold posed to Plaintiff and children like him, and expected or reasonably should have expected that Plaintiff and other children would not discover or realize the danger Ms. Arnold posed to them and would fail to protect themselves against such danger;

i.  Failing to make a reasonable inquiry as to an employee using her position with the BOE as a teacher to obtain physical custody over her non-relative, minor student, shuffling the minor student to another school, and baselessly fighting the minor student's legal parents in order to retain custody to perpetuate her assaults;

j.  Failing to exercise due care to see that the Arnold's home was reasonably safe for the use of children lawfully on the property, including Plaintiff, where it was being used as a classroom during the COVID-19 pandemic, and where BOE knew and should have known of the unreasonable risk of harm Arnold posed to Plaintiff and children like him, and expected or reasonably should have expected that Plaintiff and other children would not discover or realize the danger Ms. Arnold posed to them and would fail to protect themselves against such danger;

k.  Failing to adequately conduct reference checks, background checks, or employment screening and ensure minimum qualifications of agents, servants, or employees, including Arnold and the employees who supervised her;

l.  Failure to formulate, promulgate, enforce, and monitor the enforcement of appropriate policies and procedures to protect children like Plaintiff from sexual abuse; and

m.  Other acts and omissions as may be disclosed during the course of discovery.

ECF 16, at 29–31 ¶ 203. The School Board does not specifically challenge any of these assertions beyond arguing that they are too conclusory to state a claim. As explained above, Plaintiff has alleged that the sexual abuse began and continued on school property, that School Board officials knew that Plaintiff lived with Ms. Arnold, that School Board officials knew about the sexual harassment and abuse, that school officials ignored Plaintiff's mother's February 2020 email

asking about her son, and that Ms. Arnold sent Plaintiff sexually explicit text messages on a cell phone the School Board could monitor. *See* ECF 16, at 9 ¶ 67, at 10 ¶¶ 74–75, at 16 ¶¶ 126–27, at 11–12 ¶¶ 85–91, at 14 ¶¶ 105–06, at 15 ¶ 120.  The Court does not find these allegations too conclusory.  Rather, they plausibly raise an inference that the School Board owed Plaintiff a duty of care, that the Board breached that duty, and that the breach caused Plaintiff harm.  As such, the Board's motion to dismiss Count III will be denied.

### 2.    Count IV: Gross Negligence Against the School Board

Plaintiff brings a gross negligence claim against the Board in Count IV.  ECF 16, at 32. "[A] fine line exists between allegations of negligence and gross negligence." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (citing *State, Use of Abell v. Western Maryland R.R.,* 63 Md. 433, 443 (1885)).  As opposed to negligence, Maryland courts "have viewed gross negligence . . . 'as something *more* than simple negligence, and likely more akin to reckless conduct[.]'" *Id.* (citing *Taylor v. Harford Cnty. Dep't of Soc. Servs.,* 862 A.2d 1026, 1035 (Md. 2004)).  The Maryland Supreme Court has explained:

> [G]ross negligence is [ ] an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Id.* (citing *Liscombe v. Potomac Edison Co.,* 495 A.2d 838, 846 (Md. 1985); *Romanesk v. Rose,* 237 A.2d 12, 14 (Md. 1968)); *see also Anne Arundel Cnty. v. Reeves,* 252 A.3d 921, 936 (2021).

Plaintiff's allegations, taken as true, raise a plausible inference that the School Board employees knew that Ms. Arnold was sexually abusing Plaintiff and that they failed to take any action to address the abuse.  If true (and, to be clear, the Court does not find at this stage that these allegations are, in fact, true), these allegations would surely rise to the level of "wanton and

reckless" conduct necessary to state a claim for gross negligence. *See Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d at 670 (finding that plaintiffs plausibly stated a gross negligence claim against the school board where they alleged a classmate severely sexually assaulted the student plaintiff over an extended period, that school officials knew of the harassment, and the school officials failed to act); *see also Barbre*, 935 A.2d at 718 (collecting cases where courts have found sufficient indicia of gross negligence). As such, the Court declines to dismiss Plaintiff's gross negligence claim against the Board for failure to state a claim.

### 3. Count V: Negligent Hiring, Supervision, Monitoring, Retention, and Training Against the School Board

Plaintiff brings a claim for negligent hiring, supervision, monitoring, retention, and training against the Board in Count V. ECF 16, at 33. Again, the School Board argues that Plaintiff's allegations are too conclusory to state a claim. *See* ECF 24-1, at 15–16.

> To survive a motion to dismiss the negligent hiring, retention and supervision claim, [plaintiffs] must establish the following five elements:
>
> (1) the existence of an employment relationship;
> (2) the employee's incompetence;
> (3) the employer's actual or constructive knowledge of such incompetence;
> (4) the employee's act or omission causing the plaintiff's injuries; and
> (5) the employer's negligence in hiring[, supervising] or retaining the employee as the proximate cause of plaintiff's injuries.

*Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 17 A.3d 155, 165 (Md. App. 2011) (citing *State v. Jones*, 14 A.3d 1223 (Md. App. 2011)), *abrogated on other grounds by Plank v. Cherneski*, 231 A.3d 436 (Md. 2020); *see also Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022). The School Board's argument rests substantially on the notion that Plaintiff does not allege that the School Board was aware of "Ms. Arnold as a known child sex offender or someone that would likely engage in a sexual relationship with a student." ECF 24-1, at 16. To the extent the School Board argues Plaintiff has failed to allege that the School Board was negligent in hiring Ms.

25

Arnold, the Court agrees on this limited ground. The amended complaint alleges that the School Board was negligent in hiring Ms. Arnold because it "fail[ed] to perform a background check on Ms. Arnold" which would have retrieved "her conviction for theft, which should have indicated a lack of trustworthiness." ECF 16, at 33 ¶¶ 217(a)–(b). There is no connection between the theft conviction, which Plaintiff does not further explain beyond this passing reference, and the sexual abuse Plaintiff alleges he suffered.

However, Plaintiff's claim survives on the theories that the School Board acted negligently in supervising, monitoring, retaining, and training. As explained, Plaintiff has sufficiently alleged that employees of the School Board had actual knowledge of Ms. Arnold's sexual abuse of Plaintiff. A negligent employment claim even permits constructive knowledge, a lower standard than for a Title IX claim. And while the School Board is correct that Ms. Arnold was indeed the one sexually abusing Plaintiff, "there can be more than one cause of an injury." *Boyer v. State*, 594 A.2d 121, 136 n.18 (Md. 1991). "[W]ith respect to an employee's intentional torts, 'the critical standard is whether the employer knew or should have known that the individual was potentially dangerous.'" *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 419 (D. Md. 2022) (quoting *Jordan v. Western Distributing Co.*, 135 F. App'x 582, 589 (4th Cir. 2005)). Plaintiff's complaint raises the plausible inference that the School Board's asserted failures to monitor staff and students, to train Ms. Arnold and her supervisors, and to remove Ms. Arnold as a teacher, were a proximate cause of Plaintiff's injuries. *See Robinson I*, 2023 WL 2499854, at *23 (declining to dismiss negligent employment claim against school board where plaintiff alleged "that defendants were on notice of the need to train teachers and staff . . . on sexual abuse and harassment, device safety, and classroom supervision" and failed to do so). Thus, this claim survives the School Board's motion to dismiss, except as limited herein based on the negligent hiring theory.

26

### 4.    Count VI: Breach of Fiduciary Duty against the School Board

Next, the School Board challenges Plaintiff's breach of fiduciary duty claim raised against

it. "[F]iduciary relationships can be created by common law, by statute, or by contract, and can

have different characteristics." *Plank*, 231 A.3d at 465.. While "a breach of fiduciary duty is a

civil wrong, [ ] the remedy is not the same for any breach by every type of fiduciary." *Id.* at 466

(alteration in *Plank*) (quoting *Kann v. Kann*, 690 A.2d 509, 519 (Md. 1997)). "To establish a

breach of fiduciary duty as an independent cause of action, a plaintiff must show: '(i) the existence

of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii)

harm to the beneficiary.'" *Id.* (quoting *Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md.

2000), *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001)).

As explained above, in Maryland, a school board owes its students a duty to protect them from

harm. *See Gambrill*, 281 A.3d at 899–900.

"[W]here a plaintiff successfully states a negligence claim, this court has repeatedly held

that the plaintiff's breach of fiduciary duty claim may proceed at the 12(b)(6) stage." *Doe v. Mercy

High Sch., Inc.*, Civ. No. 23-1184-JRR, 2024 WL 3103396, at *25 (D. Md. June 24, 2024)

(collecting cases). Because the Court has concluded above that Plaintiff has stated a negligence

claim against the School Board, he has also stated a breach of fiduciary duty claim. As such, the

School Board's argument that dismissal is warranted because "[a]t no time does Plaintiff

specifically identify the fiduciary duty owed by any employee of School Board Defendant to him,"

ECF 24-1, at 16, is unavailing. The Court declines to dismiss Count VI against the Board.

### 5.    Count VIII: IIED as to the School Board, Hammaker, Gelinas

Plaintiff brings an IIED claim against the C. Arnold, School Board, Gelinas, and

Hammaker. ECF 16, at 40. Defendants School Board, Gelinas, and Hammaker argue that this

claim should be dismissed. ECF 24-1, at 17–18; ECF 32-1, at 14–15. "To state a prima facie case of intentional infliction of emotional distress, a plaintiff must allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (citing *Harris v. Jones,* 380 A.2d 611, 614 (Md. 1977); *Arbabi v. Fred Meyers, Inc.,* 205 F. Supp. 2d 462, 466 (D. Md. 2002)).

Defendants argue that "there are absolutely no allegations of specific conduct by Defendant School Board or any school officials that amount to 'intentional' or 'reckless' conduct, particularly since there are no employees specifically identified in the Amended Complaint[.]" ECF 24-1, at 17–18; *see also* ECF 32-1, at 15. Further, Defendants contend "there is no evidence of actual knowledge to support any assertion that an action taken by Defendant School Board or any of its school officials acted intentionally or recklessly relating to Plaintiff." ECF 24-1, at 18; *see also* ECF 32-1, at 15. Defendants also assert that Plaintiff has not pled extreme or outrageous conduct or a causal connection. *See* ECF 24-1, at 18; ECF 32-1, at 15.

IIED claims "may succeed only when the defendant's conduct was 'so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community.'" *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 399 (D. Md. 2011) (quoting *Borchers v. Hyrchuk,* 727 A.2d 388, 393 (Md. App. 1999)). "Moreover, the outrageous conduct must cause a 'severely disabling emotional response,' such that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris v. Jones,* 380 A.2d 611, 616 (Md. 1977)). "[T]he extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent

28

authority over him, or power to affect his interests." *Rubino*, 44 F. Supp. 3d at 624 (alteration in original) (citing *Harris,* 380 A.2d at 616).

As of 2010, "[i]n the 30 years since the Court of Appeals recognized the tort of IIED, it has upheld such claims only four times."[19] *Lasater v. Guttmann,* 5 A.3d 79, 90 (Md. App. 2010). "As such, '[t]he tort of intentional infliction of emotional distress is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Williams*, 836 F. Supp. 2d at 399 (alteration in *Williams*) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.,* 665 A.2d 297, 319 (Md. App. 1995)).

Here, the Court agrees with Defendants that Plaintiff has not sufficiently met the extremely high bar of pleading an IIED claim. "For the claim to survive, Defendants must have disregarded entirely [the plaintiff's] dignity as a human being." *Awah v. Mansfield Kaseman Health Clinic*, Civ. No. 21-938-PX, 2021 WL 6197415, at *9 (D. Md. Dec. 30, 2021) (collecting cases). While no doubt serious, the allegedly tortious wrongs, specifically that Defendants "[f]alsely represent[ed] and impl[ied] to students, parents, and the general public that Ms. Arnold was safe," "[f]ail[ed] to disclose Ms. Arnold's misconduct," "[f]ail[ed] to report Ms. Arnold," "[p]lac[ed] Ms. Arnold in a community full of children at AHS, without properly vetting her," and failed to stop

---

[19] These four cases include (1) *Faya v. Almaraz,* 620 A.2d 327 (Md. 1993), where the Maryland Supreme Court "revers[ed a] dismissal when [an] HIV-positive surgeon operated on the appellants without their knowledge of his disease," (2) *Figueiredo–Torres v. Nickel,* 584 A.2d 69 (Md. 1991), where the court "revers[ed a] dismissal when [the] plaintiff alleged [a] psychologist engaged in sexual relations with [the] plaintiff's wife during the time he was counseling the couple," (3) *B.N. v. K.K.,* 538 A.2d 1175 (Md. 1988), where the court found that a "cause of action for IIED could exist when [a] physician had sex with [a] nurse without informing her he had herpes and infected her with the disease," and (4) *Young v. Hartford Accident & Indem. Co.,* 492 A.2d 1270 (Md. 1985), where the court "revers[ed a] dismissal when [a] workers' compensation insurer insisted that [the] claimant submit to psychiatric evaluation for the 'sole purpose' of harassing her and forcing her to drop her claim or commit suicide" *Lasater,* 5 A.3d at 90.

Ms. Arnold's abuse of Plaintiff, ECF 16, at 40–41 ¶ 253, do not rise to the level of "extreme and outrageous" conduct necessary to sustain an IIED claim.

And while Plaintiff alleges that he has suffered from a long list of significant harms, the Court finds that the allegations, as written, do not provide the requisite detail to meet the severe emotional distress prong of an IIED claim. Plaintiff lists his symptoms as "[s]evere mental anguish and despair;" "[s]evere stress," "[e]motional distress and anger," "[s]evere anxiety, nervousness, fearfulness, and panic attacks," "[d]epression," "[s]evere anger," "[s]evere irritability," "[p]ersonality changes," "[a] loss of enjoyment of life," "[d]ifficulty in trusting and interacting with others, including those in positions of authority and/or those in intimate relationships," "[d]ifficulty in participating in and enjoying intimate relationships," "[a] loss of earnings and earning capacity due to trauma," "[n]egative impacts on academic grades," and "[r]eputational harm." *See* ECF 16, at 17–18 ¶ 141. First, Plaintiff primarily attributes this harm to "sexual harassment, sexual assault, and rape by Ms. Arnold." *See id.* Later, Plaintiff asserts without detail that the "BOE caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 141 above." *Id.* at 41 ¶ 255. While the listed harms are assuredly difficult and grave, they are not sufficiently particular to meet the high standard for an IIED claim under Maryland law. *See Doe v. Anne Arundel Cnty.*, Civ. No. 23-3451-JRR, 2025 WL 675059, at *26 (D. Md. Mar. 3, 2025) (collecting cases where courts found insufficient allegations that did not describe in detail the effects of harm on plaintiff's daily life or the nature, intensity, or duration of the emotional trauma). For these reasons, Plaintiff's IIED claim will be dismissed as to the School Board, Gelinas, and Hammaker.

**D.    Counts IX and X: Section 1983 Claims Against Hammaker and Gelinas**

42 U.S.C. § 1983 provides "a method for vindicating federal rights." *Albright v. Oliver*,

510 U.S. 266, 271 (1994) (quotation omitted).  It allows suits against any "person" acting under

color of state law who subjects the claimant to "the deprivation of any rights, privileges, or

immunities secured by the Constitution."  42 U.S.C. § 1983.  Claims brought under § 1983 are

analyzed differently depending upon whether the plaintiff brings the claim against an individual,

an entity, or a municipality.  Here, Plaintiff only brings these claims against Defendants Gelinas

and Hammaker.  *See* ECF 16, at 42, at 44.

Defendants argue only that Defendant Gelinas, not Hammaker, cannot be sued in his

official capacity under § 1983.  *See* ECF 32-1, at 8 ("Defendant Gelinas is entitled to sovereign

immunity from official capacity claims as a matter of law."), at 9 ("There is no dispute that

Defendant Gelinas has been named a defendant solely based upon his employment status as the

school principal at AHS"), at 10 ("[B]ecause Plaintiff has filed suit based upon allegations of

failures to take action by Defendant Gelinas as principal of AHS in his official capacity, Defendant

Gelinas, as the school principal, is entitled to such immunities in his official capacity."); *see* ECF

37, at 9 ("[B]ecause Plaintiff has filed suit based upon allegations of failures to take action by the

school *principals* at AHS and BHS and other school board officials, in their official capacities, not

only is the School Board entitled to immunity, but so too are the school *principals* be entitled to

such immunities in their official capacities." (emphasis added)).  The Court will follow suit and

only address this argument in relation to Defendant Gelinas, not Hammaker.

1.    Defendant Gelinas and His Official Capacity

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and must also show "that the alleged deprivation was committed by a

*person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

In *Will v. Michigan Department of State Police*, the Supreme Court explained that "neither a State

nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71

(1989). When damages would be payable from the state treasury, the state is the real party in

interest even though officials are the nominal parties. *Id.* (finding no difference in a suit against a

state officer in his official capacity and a suit against the state itself). "Section 1983 provides a

federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum

for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at

66.

Liability under § 1983 attaches only upon personal participation by a defendant in the

constitutional violation. It is well established that the doctrine of respondeat superior does not

apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of

supervisory officials "is not based on ordinary principles of respondeat superior, but rather is

premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'

misconduct may be a causative factor in the constitutional injuries they inflict on those committed

to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*,

737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with

evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was

engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens

like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show

deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was

an affirmative causal link between the supervisor's inaction and the particular constitutional injury

suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

32

Plaintiff argues that the School Board (and consequently Gelinas, in his official capacity) can be sued under § 1983. *See* ECF 35, at 9–12. In doing so, Plaintiff argues that the Board is not "an alter ego of the State, as opposed to the County." *Id.* at 11. "Under Maryland law, 'in certain contexts,' county boards of education are considered 'an arm of the State.'" *Robinson I*, 2023 WL 2499854, at *12 (quoting *Neal*, 225 A.3d at 69). Maryland's highest court has "observed that, with respect to whether the boards are local or State agencies, they have 'hybrid' qualities." *Id.* (citing *Donlon v. Montgomery Cnty. Pub. Schs.*, 188 A.3d 949, 961 (Md. 2018)); *see also Bennett v. Harford Cnty.*, 301 A.3d 117, 124 (Md. 2023) (noting that Maryland caselaw "reflects that the character of county boards of education changes depending on the context in which an issue arises"). Nevertheless, courts have continued to find "that county school boards in Maryland are State agencies and therefore not 'persons' subject to suit under § 1983." *Robinson I*, 2023 WL 2499854, at *13–14 (collecting cases and dismissing similar official capacity claims); *see also Willey*, 557 F. Supp. 3d at 663 (denying as futile request to amend complaint to specify an official capacity claim); *Jones-McDaniel v. Bd. of Educ. of Montgomery Cnty.*, Civ. No. DKC-24-3075, 2025 WL 2494345, at *5 (D. Md. Aug. 29, 2025) (finding that Montgomery County School Board was arm of the State and thus not a person under § 1983). As such, Counts IX and X will be dismissed against Defendant Gelinas to the extent they are brought in his official capacity.[20]

### 2.    Individual Capacity Claims

Defendants argue that "Plaintiff's claims are essentially against Defendant School Board as there are no causes of actions asserting any claims against any individual defendants employed by Defendant School Board that are separate and apart from their actions committed in their

---

[20] The Court reiterates that Defendants have not made this argument in relation to Defendant Hammaker. Because Defendants have not moved to dismiss them, the official capacity § 1983 claims against Hammaker remain live, to the extent they state a claim.

official capacities," ECF 24-1, at 8; *see also* ECF 32-1, at 9, essentially arguing that the claims can only be read as official capacity claims. As other judges have noted, "[i]t is not a prerequisite for a plaintiff to state that he is suing a defendant in his or her individual capacity in order to state a cause of action under § 1983." *Heward v. Bd. of Educ. of Anne Arundel Cnty.*, Civ. No. 23-195-ELH, 2023 WL 6381498, at *21 (D. Md. Sept. 29, 2023) (quoting *Harris v. Copeland, C.A.*, GRA-11-02209, WL 4504764, at *5 (D.S.C. Aug. 22, 2013)).

In *Biggs v. Meadows*, the Fourth Circuit explained that "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." 66 F.3d 56, 61 (4th Cir. 1995). Factors relevant to this analysis include whether "the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint"; whether "a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits"; and "[t]he nature of any defenses raised in response to the complaint." *Id.* In engaging in this analysis, "the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.* Here, neither party has briefed whether Plaintiff's complaint reflects that these claims were brought in Defendants Gelinas Hammaker's individual capacities. The Court therefore will not address the question at this juncture and will evaluate whether Plaintiff has stated a claim against Gelinas and Hammaker in their individual capacities.

### 3. Failure to State a Claim as to Count IX (Title IX Violation Brought Pursuant to § 1983)

In Count IX, Plaintiff brings a § 1983 claim against Gelinas and Hammaker for violation of his Title IX rights. ECF 16, at 42. As a preliminary matter, while the argument is a little

34

muddled, Defendants appear to contend that a Title IX count cannot be brought against individuals. *See* ECF 24-1, at 9 (citing *Smith v. Metropolitan Sch. Dist.*, 128 F.3d 1014, 1019–21 (7th Cir. 1996)). In response, Plaintiff cites *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 256 (2009), for the proposition that a plaintiff can bring both a Title IX claim and a § 1983 claim. *See* ECF 35, at 13–14. In that case, the Supreme Court indeed held that "Congress did not intend Title IX to preclude § 1983 *constitutional* suits." *Fitzgerald*, 555 U.S. at 256 (emphasis added). But Count IX alleges a violation of Plaintiff's *statutory* Title IX rights. *See* ECF 16, at 42. "The [*Fitzgerald*] Court reasoned that the reach of Title IX and the *Equal Protection Clause* differ, observing that Title IX allows for lawsuits against only educational institutions and programs, but '§ 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 700 (4th Cir. 2018) (emphasis added) (quoting *Fitzgerald*, 555 U.S. at 257). However, in cases where, as here, "the § 1983 claim is based on a statutory right, 'evidence of such congressional intent [as to whether Congress intended to preclude § 1983 claims through other statutes] may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Fitzgerald*, 555 U.S. at 252 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (1981)).

In *Fitzgerald*, the lower court had "characterized Title IX's implied private remedy as 'sufficiently comprehensive' to preclude use of § 1983 to advance statutory claims based on Title IX itself." 555 U.S. at 251 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 179 (1st Cir. 2007)). The First Circuit extended this reasoning to the constitutional claims. *Id.* On appeal, the Supreme Court addressed the viability of a § 1983 constitutional claim brought concurrently

with a Title IX claim, but did not address the lower court's holding that Title IX precludes a § 1983 claim based on a statutory violation. *Id.*

Prior to *Fitzgerald*, courts had held that a plaintiff may not maintain a § 1983 claim based only on a violation of Title IX. *See Seamons v. Snow*, 84 F.3d 1226, 1234 n.8 (10th Cir. 1996) (finding that Title IX does not preempt a § 1983 constitutional claim but noting in a footnote that "[o]f course, the [§] 1983 action could not be predicated on a violation of Title IX itself" and that "[s]uch a duplicative effort would be barred" (citing *Starrett v. Wadley*, 876 F.2d 808, 813–14 (10th Cir. 1989))); *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 501 (M.D.N.C. 2002) (noting that "a claim under Title IX does not preempt enforcement of independent *constitutional* rights under § 1983 where both claims arise from the same underlying conduct" (emphasis added)); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Although this court has never considered whether a plaintiff can use § 1983 to assert a Title IX claim against an individual school official, we conclude that to allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients."); *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) ("[B]ecause Title IX only prohibits discrimination by federal grant recipients, a supervisory school official may not be sued in his individual capacity, either directly under Title IX or under § 1983 based upon a violation of Title IX.").

And after *Fitzgerald*, and even in reliance on it, courts have held the same. *See Moore v. Freeport Cmty. Unit Sch. Dist. No. 145*, 570 F. Supp. 3d 601, 611 (N.D. Ill. 2021) (citing *Fitzgerald* for the proposition that a § 1983 *Monell* claim "cannot be based on a federal statutory violation of Title IX"); *Wilkerson v. Univ. of N. Tex.*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (relying on *Fitzgerald* and other cases in dismissing a § 1983 claim based on a Title IX violation

because plaintiff sought to use § 1983 to avoid Title IX's restriction on suits against individuals); *Sheppard v. Visitors of Va. State Univ.*, No. 3:18-CV-723-HEH, 2019 WL 1869856, at \*5–6 (E.D. Va. Apr. 25, 2019) (citing *Fitzgerald* and dismissing a Title IX claim brought against individuals pursuant to § 1983 because "Title IX does not provide a cause of action against individual defendants"); *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-CV-03753-SK, 2018 WL 4859978, at \*5 (N.D. Cal. Apr. 24, 2018) (citing *Fitzgerald* and dismissing § 1983 claim against individual defendants based on a violation of Title IX). Given that Title IX does not permit actions against individuals, the Court finds this line of reasoning persuasive and further finds that Plaintiff may not bring a § 1983 claim against individual defendants for violations of Title IX.

It bears noting that Plaintiff cites only to one case where a court has found viable a § 1983 claim for the alleged violation of a statutory Title IX right.[21] *See* ECF 35, at 13–16, at 22 (citing *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997)). While the *Crawford* court did hold that "there is no evidence that Congress intended to foreclose the use of § 1983 to redress violations of Title IX," 109 F.3d at 1284, the two main circuit court cases on which the Eighth Circuit relied in so holding, *see id.* at 1283 (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 722–24 (6th Cir.1996); *Seamons*, 84 F.3d at 1233–34), discussed *constitutional* violations brought under § 1983. In *Lillard*, the Sixth Circuit evaluated § 1983 claims "premised on alleged *constitutional* violations," which the Sixth Circuit found particularly noteworthy. 76 F.3d at 722–23 (emphasis in original). In *Seamons*, as noted above, the Tenth Circuit expressly rejected the notion that a § 1983 claim can be based entirely on a Title IX violation. 84 F.3d at 1234 n.8. Thus, the Court is

---

[21] The other case Plaintiff cites on this point does not concern a statutory § 1983 claim, only a constitutional one. *See Doe v. Miami Univ.*, 883 F.3d 579, 595 (6th Cir. 2018). In similar cases concerning Title IX and § 1983 claims discussed herein, the § 1983 claims are typically brought only for constitutional violations. *See, e.g., Jennings*, 482 F.3d at 701; *Willey*, 557 F. Supp. 3d at 655.

not persuaded that a § 1983 claim against an individual may be premised on a Title IX violation.[22]
Count IX, Plaintiff's Title IX claim brought against Defendants Hammaker and Gelinas pursuant
to § 1983, will be dismissed.

> 4.    Failure to State a Claim as to Count X (Equal Protection Violation Brought
>       Pursuant to § 1983)

The Court now turns to Count X, Plaintiff's Fourteenth Amendment equal protection claim
brought pursuant to § 1983, *see* ECF 16, at 44, which, as noted *is* viable pursuant to *Fitzgerald*,
555 U.S. at 258. Plaintiff asserts that his equal protection rights were violated because "[i]f
Survivor A had been female, Defendants would have prevented his abuse" and "would not have
allowed Survivor A to reside with a male teacher without even the barest of supervision." ECF
16, at 44 ¶¶ 278–79.

As noted, to prevail under § 1983, Plaintiff must allege that Defendants Gelinas and
Hammaker deprived him of a constitutional right while acting under color of state law. *See Peltier
v. Charter Day Sch., Inc.*, 37 F.4th 104, 115 (4th Cir. 2022). "[T]he Equal Protection Clause
secures a university student's "right to be free from sexual harassment in an educational setting."
*Feminist Maj. Found.*, 911 F.3d at 701 (citing *Jennings*, 482 F.3d at 701). "Under *Jennings*, that
right encompasse[s] an equal protection claim against a university administrator predicated on a
theory of supervisory liability." *Id.* However, "to allege equal protection claim based on
supervisory liability, plaintiff must plausibly demonstrate supervisor's discriminatory purpose."

---

[22] To the extent Plaintiff seeks to analogize Title IX to Title VII, *see* ECF 35, at 22, that analogy
does not advance Plaintiff's position. In the Title VII context, the Fourth Circuit has found that a
Title VII violation cannot form the basis of a § 1983 claim. *Onan v. Cnty. of Roanoke*, 52 F.3d
321 (4th Cir. 1995) (Table) (applying *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S.
366 (1979), and finding that a § 1983 claim could not be premised on a Title VII violation); *Causey
v. Balog*, 929 F. Supp. 900, 913 (D. Md. 1996) ("[A]lthough the Fourth Circuit has not yet had the
occasion to do so, other circuits have taken the obvious step of applying *Novotny* to hold that a
plaintiff cannot assert violations of Title VII through § 1983."), *aff'd,* 162 F.3d 795 (4th Cir. 1998).

*Id.* at 703 (citing *Iqbal*, 556 U.S. at 676–77). "In evaluating a plaintiff's deliberate indifference claim under the Equal Protection Clause, a court may draw on the 'substantial[lly] similar' deliberate indifference standard applied in Title IX cases." *Robinson II*, 2023 WL 6643373, at *10 (additional internal quotation marks omitted) (quoting *Hurley*, 911 F.3d at 703).

Defendants Gelinas and Hammaker argue that Plaintiff's Fourteenth Amendment claim must be dismissed because the amended complaint does not "identify any factual allegations that specifically demonstrate that either Defendant Gelinas or Defendant Hammaker failed to keep Plaintiff 'free from sexual abuse at the hands of a public-school employee.'" *See* ECF 32-1, at 13 (citations omitted). Defendants further assert that "the conduct complained of was committed by Ms. Arnold, not Defendant Gelinas or Defendant Hammaker; and the alleged deprivation was the result of Ms. Arnold's conduct." *Id.* It is true that Plaintiff has not alleged (nor is there any indication otherwise) that Defendants Gelinas or Hammaker committed any sexual abuse against Plaintiff. Nevertheless, for the same reasons explained in the direct Title IX claim brought against the School Board, Plaintiff's allegations give rise to an inference that Defendants Gelinas and Hammaker were deliberately indifferent to known sexual abuse. As such, the Court will not dismiss Count X on this basis.

### E.    Count II: Violation of Maryland Declaration of Rights Brought Against the School Board

"Article 24 of the Maryland Declaration of Rights is construed *in pari materia*, or in connection with, the Fourteenth Amendment of the United States Constitution and is generally interpreted and analyzed the same way." *Willey*, 557 F. Supp. 3d at 671 (citing *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061, 1071 (Md. 2002)). Thus, for the same reasons explained as to Count X, and, by extension, Count I, Plaintiff's Maryland Declaration of Rights claim, brought under Article 24, *see* ECF 16, at 26 ¶ 180, will not be dismissed at this juncture.

F.    **Section 5-518 Does not Entitle the School Board to Dismissal.**

Finally, the School Board argues that Md. Code Ann., Cts. & Jud. Proc. § 5-518 requires that it be dismissed from this suit because it "can only be named as a defendant herein to indemnify" the employees and because, in the School Board's eyes, "there are no substantive claims to demonstrating a tortious claims [sic] against any individual employee of Defendant School Board based upon actions committed within the scope of their employment." ECF 24-1, at 18. This interpretation belies the statutory directive that "[t]he county board *shall be joined* as a party to an action against a county board employee, county board member, or volunteer that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment[.]" § 5-518(d)(1) (emphasis added). "The issue of whether the county board employee acted within the scope of employment may be litigated separately." *Id.* (d)(2). When a plaintiff sues a county board employee, "[i]n order to force a county school board to indemnify a judgment against" that employee, "§ 5-518(d) require[s] a county board [to] be joined as a party throughout the entire litigation[.]" *Neal*, 225 A.3d at 74. Thus, dismissal of the School Board is not warranted, and, indeed, would be improper under *Neal*.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions, ECFs 24 and 32, are granted in part and denied in part. The School Board's motion is granted as to the negligent hiring theory of Count V (negligent hiring, supervision, monitoring, retention, and training) and as to Count VIII (IIED). Defendant Gelinas and Hammaker's motion is granted as to Count VIII (IIED) and Count IX (the § 1983 claim based on a violation of Title IX), as well as Count X against Gelinas, to the extent it is brought in his individual capacity. The motions are otherwise denied.

The following claims survive: Count I (violation of Title IX) against the School Board, Count II (violation of Article 24 of the Maryland Declaration of Rights) against the School Board,

Count III (negligence) against the School Board, Count IV (gross negligence) against the School Board, Count V (negligent hiring, supervision, monitoring, retention, and training) against the School Board (except as limited), Count VI (breach of fiduciary duty) against the School Board, Count VII (negligence) against Carson Arnold, Count VIII (IIED) against Carson Arnold, and Count X (Equal Protection claim brought pursuant to § 1983) against Gelinas (only in his individual capacity) and Hammaker (in both her individual and official capacities).

A separate implementing Order will issue.

Dated: <u>September 18, 2025</u>                                       <u>/s/</u>
                                                                 Brendan A. Hurson
                                                                 United States District Judge