**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SURVIVOR A, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 24-1571-BAH |
| CARSON C. ARNOLD ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Survivor A ("Plaintiff"), proceeding anonymously, brought suit against Carson C. Arnold ("Defendant"),[1] Anne Arundel County Board of Education, Bridgitte Hammaker, the social worker at Annapolis High School ("AHS"), and Patrick Gelinas, the principal of AHS. ECF 16 (amended complaint). Plaintiff asserts claims related to the sexual abuse Plaintiff alleges he suffered at the hands of Jennifer Arnold ("Ms. Arnold"), Plaintiff's AHS English teacher and the then-wife of Defendant, with whom Plaintiff lived. *Id.* at 2 ¶ 2. Pending before the Court is Defendant's partial motion for judgment on the pleadings. ECF 59. Plaintiff filed a response in opposition, ECF 60, to which Defendant replied, ECF 61.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the partial motion for judgment on the pleadings is GRANTED.

[1] Although there are multiple defendants in this action, for ease the Court refers to Carson C. Arnold as "Defendant" because the present opinion adjudicates a motion brought solely by him.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I. BACKGROUND

The Court summarized Plaintiff's allegations and procedural developments in its prior memorandum opinion. *See* ECF 38.[3] While the Court assumes familiarity with this prior opinion, it will highlight relevant facts and procedural history here.

### A. Factual Background[4]

When Plaintiff was about 14 years old, he began living with Ms. Arnold, his freshman English teacher; Defendant, Ms. Arnold's then-husband; and their four minor children. ECF 16, at 9–10 ¶¶ 66, 69, 72. Plaintiff alleges that Ms. Arnold began grooming him for sexual abuse before he moved into her home in June of 2019, and that about six months after he moved in with her and Defendant, on December 12, 2019, she began to sexually abuse him. *Id.* at 9 ¶ 67, at 10 ¶ 72, at 11 ¶ 81.

Plaintiff contends that during this time he also suffered physical and verbal abuse by Defendant, stemming from "jealousy and anger" as a result of the "excessive attention that Ms. Arnold was giving to [Plaintiff]." *See* ECF 16, at 11 ¶ 76 (alleging that "[o]n one evening in July 2019, during a boating outing, Defendant [ ] threw a boating pole at [Plaintiff]"); *id.* at 15 ¶ 115 ("On or about March 11, 2020, [Defendant] came home in an intoxicated state and confronted [Plaintiff], asking words to the effect of 'what are you doing with my wife?' [Plaintiff], fearful, denied that anything inappropriate was occurring."). In May 2020, Defendant texted Plaintiff:

> [P]lease leave my home immediately and return to your parents in Connecticut. I do not want you living at my house and your mother and father want you back home with them. Your continued presence is destroying my family and our future together. I'm not sure if you were made aware by Jen that your mother has been seeking your return, but she has and still does.

[3] Also available at *Survivor A v. Arnold*, Civ. No. BAH-24-1571, 2025 WL 2677291 (D. Md. Sep. 18, 2025).

[4] These facts come from the amended complaint and the Court therefore assumes them to be true for purposes of adjudicating the present motion. *See Burbach Broadcasting Co. v. Elkins Radio*, 278 F.3d 401, 405–06 (4th Cir. 2002).

*Id.* at 16 ¶ 122. Plaintiff alleges that Defendant "was aware as of February 2020, at the latest," that Ms. Arnold was sexually abusing Plaintiff, but contends that Defendant "never reported to authorities or [Plaintiff's] parents that Ms. Arnold was or may be abusing [Plaintiff]." *Id.* at 13 ¶ 99, at 16 ¶ 123. "By August 2020, [Defendant] had stopped living at the residence." *Id.* at 16 ¶ 124. Plaintiff alleges that the sexual abuse continued until Plaintiff left Ms. Arnold's home to live with his father in February 2021. *Id.* at 16 ¶ 125, at 17 ¶ 133. Plaintiff's amended complaint includes, among other counts, a claim of intentional infliction of emotional distress ("IIED") brought against all defendants in this action. *Id.* at 40–41 ¶¶ 252–56.

**B. Procedural History**

Defendants Anne Arundel County Board of Education, Bridgitte Hammaker, and Patrick Gelinas previously brought motions to dismiss, which the Court granted in part and denied in part. ECF 38. As relevant here, the Court granted the motions to dismiss as to the IIED claim. *Id.* at 30. Defendant now brings a motion for judgment on the pleadings seeking dismissal of the IIED claim against him as well. ECF 59. Plaintiff filed a response in opposition to the motion, ECF 60, and Defendant filed a reply, ECF 61.

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.*, 265 F. Supp. 3d 633, 637 n.5 (D. Md. 2017) (alteration in original). In assessing this motion, therefore, the Court will discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences in favor of the plaintiff and considers

whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. <u>ANALYSIS</u>

Plaintiff brings an IIED claim against Defendant. ECF 16, at 40–41 ¶¶ 252–56. "To state a prima facie case of [IIED], a plaintiff must allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (citing *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977); *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002)). Defendant argues that Plaintiff's IIED claim against him should be dismissed for failure to plead a severe emotional response with particularity, and because Defendant's alleged conduct underlying the claim is not extreme and outrageous. ECF 59-1, at 7–8.

IIED claims "may succeed only when the defendant's conduct was 'so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community.'" *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 399 (D. Md. 2011) (quoting *Borchers v. Hyrchuk*, 727 A.2d 388, 393 (Md. App. 1999)).

"Moreover, the outrageous conduct must cause a 'severely disabling emotional response,' such that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris*, 380 A.2d at 616). "[T]he extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests." *Rubino*, 44 F. Supp. 3d at 624 (alteration in original) (quoting *Harris*, 380 A.2d at 616). As of 2010, "[i]n the 30 years since the [Supreme Court of Maryland] recognized the tort of IIED, it has upheld such claims only four times."[5] *Lasater v. Guttmann*, 5 A.3d 79, 90 (Md. App. 2010). "As such, '[t]he tort of intentional infliction of emotional distress is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Williams*, 836 F. Supp. 2d at 399 (alteration in *Williams*) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. App. 1995)).

The Court agrees with Defendant that Plaintiff's allegations, while serious and troubling, do not clear the extremely high bar to maintain a viable a IIED claim. First, Plaintiff has not pled sufficient facts to establish that Defendant's conduct was extreme and outrageous such that it must "be regarded as atrocious, and utterly intolerable in a civilized community." *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992) (quoting *Harris*, 380 A.2d at 614). Plaintiff's specific allegations regarding the Defendant's affirmative acts include one instance of physical violence and two instances of verbal harassment. *See* ECF 16, at 11 ¶ 76, at 15 ¶ 115, at 16 ¶ 122. Aside from those instances, Plaintiff's claim against Defendant turns on Defendant's alleged failure to act. *Id.* at 16 ¶ 123. This conduct does not rise to the level of "extreme and outrageous" necessary to sustain an IIED claim. Plaintiff contends that his IIED claim against Defendant is analogous to *Young v. Hartford Accident and Indemnity Company*,

[5] *See Faya v. Almaraz*, 620 A.2d 327 (Md. 1993); *Figueiredo-Torres v. Nickel*, 584 A.2d 69 (Md. 1991); *B.N. v. K.K.*, 538 A.2d 1175 (Md. 1988); *Young v. Hartford Accident & Indem. Co.*, 492 A.2d 1270 (Md. 1985).

492 A.2d 1270 (Md. 1985), because Plaintiff contends that *Young* involved "a third party [who] forced together a victim and someone who should have had their best interests at heart." ECF 60, at 5 (emphasis omitted). Even accepting this characterization of *Young* as accurate,[6] that argument does not apply to Plaintiff's claims against Defendant, since Plaintiff does not allege that Defendant "forced" Plaintiff together with Ms. Arnold—to the contrary, his altercations with Defendant allegedly revolved around Defendant's desire that Plaintiff leave the Arnold family home. *See, e.g.*, ECF 16, at 16 ¶ 122 (referencing a text from Defendant asking Plaintiff to "please leave [Defendant's] home immediately"). Moreover, as noted, *see supra* n.6, *Young* presented a distinct situation wherein a workers' compensation claimant sued her insurer and alleged that the insurer insisted on a psychiatric evaluation for the "sole purpose" of "harass[ing] [her] into abandoning her claim, or into committing suicide." 492 A.2d at 1278. Nowhere does Plaintiff allege that Defendant acted—or failed to act—with such malicious intent.

Additionally, the Court previously found that while the harms enumerated in the amended complaint "are assuredly difficult and grave, they are not sufficiently particular to meet the high standard for an IIED claim under Maryland law." ECF 38, at 30 (citing *Doe v. Anne Arundel Cnty.*, Civ. No. 23-3451-JRR, 2025 WL 675059, at *26 (D. Md. Mar. 3, 2025)). The same alleged harms apply to the IIED claim against Defendant. Plaintiff contends that the

[6] In *Young*, Maryland's highest court held that an IIED claim was viable where the plaintiff alleged that an insurance company forced the plaintiff to undergo a psychological examination solely to "harass the [p]laintiff into abandoning [a worker's compensation] claim, or into committing suicide." *Young*, 492 A.2d at 1278. Thus, the survival of the IIED claim there did not rest on the allegation that the defendant "forced together a victim and someone who should have had [the victim's] best interests at heart," ECF 60, at 5 (emphasis omitted), but on the fact that if a jury concluded that the sole reason the victim and the evaluating doctor were put together was for the reason the plaintiff alleged, "then the physician conspired with [the defendant] to harass [the plaintiff] into abandoning her claim or into committing suicide because the allegation excludes any proper medical or claims-evaluation motive for the examination." *Young*, 492 A.2d at 1278. *Young* therefore presented facts and allegations that differ greatly from those presently before the Court.

Court's prior decision on this IIED prong does not control the present analysis because, in his view, "Plaintiff's damage came from direct acts" and it is therefore "reasonable to conclude that the emotional distress inflicted upon Plaintiff was accordingly more severe." ECF 60, at 6. This argument presumably seeks to draw a distinction from the Court's prior memorandum opinion on the basis that Plaintiff has not alleged that the other defendants in this action committed any direct acts of physical violence or verbal abuse against him. *See generally* ECF 16. However, the Court did not find that Plaintiff's IIED claim failed to meet the emotional harm prong for lack of severity—rather, it found that the harm was not pled with sufficient particularity, and that has not changed.[7] *See* ECF 38, at 30. The IIED claim against Defendant must therefore be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial motion for judgment on the pleadings is **GRANTED.** A separate implementing order will issue.

Dated: November 13, 2026

/s/
Brendan A. Hurson
United States District Judge

[7] To the extent Plaintiff's opposition requested leave to amend his complaint, *see* ECF 60, at 7, "[a] response brief to a motion to dismiss"—or a motion for judgment on the pleadings—"is not an appropriate means to request leave to amend a complaint." *Arch Insurance Co. Inc. v. Shaffer Ford Sales Inc.*, No. 1:21CV82, 2023 WL 1179754, at *2 (N.D.W.V. Jan. 30, 2023). Rather, "a plaintiff's request to amend the complaint should come in the form of a motion to amend." *Jones v. Glendale Apartment Props. LLC*, Civ. No. DKC-24-3731, 2025 WL 2659875, at *7 (D. Md. Sep. 17, 2025) (citing Fed. R. Civ. P. 7(b)).